**Mario L. SIMS, Appellant–Plaintiff,**

v.

**Michael P. BARNES, Appellee–Defendant.**

No. 71A05–9611–CV–490.

Court of Appeals of Indiana.

Dec. 16, 1997.

Transfer Denied April 29, 1998.

Mario L. Sims, Plainfield, Pro Se.

Richard A. Nussbaum, II, Sopko & Firth, South Bend, for Appellee–Defendant.

## OPINION

BARTEAU, Judge.

Mario L. Sims appeals a grant of summary judgment in favor of St. Joseph County Prosecutor Michael P. Barnes.

Affirmed.

### *FACTS*

On January 22, 1994, Sims was placed in the St. Joseph County jail after he was charged with burglary, criminal deviate conduct, and rape. On February 1, 1994, a local television news program, which aired in South Bend, featured a report in which Sims and Barnes were quoted. The transcript of this news report follows:

> Mario Sims—a controversial community activist—remains behind bars tonight after being accused by his estranged wife of rape and burglary. He's been in the St. Joseph County Jail since January 22nd.
>
> . . . .
>
> According to family members, Sims and his wife are going through a divorce and a custody battle for the couple's young son.
>
> . . . .
>
> But the story doesn't end there—Sims claims he is now being accused of making death threats to members of the prosecutor's office. Prosecutor Mike Barnes acknowledged death threats were made but they will not comment any further. . . .
>
> . . . .
>
> Sims has long been an outspoken opponent of various local government officials and has also been a community activist— he claims the allegations may have political

ties. In another twist, Sims says he's being accused of something new.

> . . . .
>
> Mario Sims [on camera]: ["]Now I'm supposed to be involved in a plot to kill the prosecutor [ ]—figure it out. I think its [sic] definite I've been set up.["]
>
> . . . .
>
> We asked the prosecutor if Sims is being accused of making death threats. Mike Barnes would only tell Newscenter 16 that his deputy prosecutor had quote: ". . . indicated that there had been threats made against the prosecutors [sic] staff." Unquote.

R. 36–37. On November 15, 1995, Sims, who was convicted of the charges referred to above, filed a pro se complaint against Barnes. The complaint alleged that Barnes, by making the comment which appeared in the February 1 news report, was liable to Sims on a theory of defamation. On June 20, 1996, Barnes filed a motion for summary judgment and, in support of his motion, argued that, under the Indiana Tort Claims Act ("ITCA"), he was shielded from liability for the statement he made to the press. The trial court granted Barnes' summary judgment motion, finding that Barnes was immune from Sims' suit.

### *STANDARD OF REVIEW*

This court stands in the shoes of the trial court when it reviews the grant or denial of a summary judgment motion. *Anderson v. Yorktown Classroom Teachers Ass'n,* 677 N.E.2d 540, 543 (Ind.Ct.App.1997). A grant of summary judgment may be affirmed upon any theory which the designated materials support, *Landau v. Bailey,* 629 N.E.2d 264, 266 (Ind.Ct.App.1994), "and we are not limited to reviewing the trial court's reasons for granting summary judgment." *Claxton v. Hutton,* 615 N.E.2d 471, 473 (Ind.Ct.App.1993). "We will affirm the granting of the summary judgment motion only if the material facts and the relevant evidence specifically designated to the trial court reveal that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law." *Id.* "We must liberally construe all evidence in favor of the nonmov-

ant and resolve any doubts as to the existence of a genuine issue against the proponent of the motion." *Hoffman v. Dunn,* 496 N.E.2d 818, 820 (Ind.Ct.App.1986).

## DISCUSSION[1]

◼ Sims argues that Barnes has no immunity for the statement he made to the press and that therefore the trial court improperly granted summary judgment. According to Sims, Barnes was not acting within the scope of his authority when he made his statement to the press. Barnes argues that his statement was made within the scope of his prosecutorial authority, that he is absolutely immune from liability to Sims, and that summary judgment was properly granted. We agree with Barnes because he is absolutely immune from liability under common law principles and under the ITCA.

With respect to Barnes' common law immunity, we are guided by *Foster v. Pearcy,* 270 Ind. 533, 387 N.E.2d 446 (1979). In *Foster,* deputy prosecutor Leroy New presented a grand jury with evidence of a narcotics smuggling ring. 270 Ind. at 534, 387 N.E.2d at 447. On the basis of this evidence, the grand jury returned an indictment against Foster. *Id.* Foster subsequently filed a libel suit against New and against Noble Pearcy,[2] the prosecutor under whom New served. *Id.* According to Foster's complaint, New told the press "(1) that Foster had grossed $18,000 per week from his heroin business; (2) that Foster was part of a nationwide heroin ring; ... (3) that the indictment was a result of a two-month investigation by local and federal authorities[; and (4) ] that the police knew the location of huge profits Foster had made during a two-year stint as the boss of the operation." *Id.* Pearcy moved for dismissal under Trial Rule 12(B)(6), and the trial court granted Pearcy's motion. *Id.* Although the court of appeals

reversed, the supreme court reinstated the trial court's judgment. *Id.*

The supreme court held that Pearcy "enjoys absolute immunity from liability for statements made by him or his deputies to the press regarding pending cases in his office." *Id.* at 538, 387 N.E.2d at 449. It noted that "where, as here, the acts are reasonably within the general scope of authority granted to prosecuting attorneys, no liability will attach." *Id.* The court reasoned that:

> The prosecutor, as an elected law enforcement official, has a duty to inform the public regarding cases which are pending in his office. He must be able to exercise his best judgment, independent of other irrelevant factors, in serving as the State's advocate and in communicating such developments and events to the public. Were a prosecutor granted only a qualified immunity, the threat of lawsuits against him would undermine the effectiveness of his office and would prevent the vigorous and fearless performance of his duty that is essential to the proper functioning of the criminal justice system....
>
> ... [T]he prosecuting attorney is duty-bound to keep the public informed as to the activities of his office.... We therefore conclude that since it is a prosecutor's duty to inform the public as to his investigative, administrative and prosecutorial activities, the prosecutor must be afforded an absolute immunity in carrying out these duties.

*Id.* at 536–37, 387 N.E.2d at 448–49.

◼ Under common law principles, Barnes is absolutely immune from liability to Sims. From Barnes' statement to the press, it may be understood that the prosecution of Sims was proceeding in the face of alleged death threats. This statement therefore disclosed

---

1. Throughout our discussion, we assume, *arguendo,* that Barnes' statement to the press implies that Sims made death threats. If Barnes' statement did not refer to Sims or Sims' conduct, Barnes would of course be entitled to judgment as a matter of law, for his statement could not have been defamatory with respect to Sims. *See Street v. Shoe Carnival, Inc.,* 660 N.E.2d 1054, 1058 (Ind.Ct.App.1996) (noting that a plaintiff who seeks to establish defamation must show,

*inter alia,* that there has been "a communication with defamatory imputation").

2. "Foster argued ... that his complaint stated a valid cause of action against Pearcy under theories of respondeat superior and negligence in hiring and supervising New." *Foster,* 270 Ind. at 534–35, 387 N.E.2d at 447.

information about the activities of Barnes' office, and it informed the public about the case pending against Sims. Although the content of this statement is different than that of the deputy prosecutor in *Foster*, we are convinced that the difference between the two statements is not significant in light of the similarities between them. Both statements inform the public about a case pending in the prosecutor's office, and both statements were made by prosecutors who were fulfilling their duty to apprise the public of developments and events in the state's pending case against the defendant. The making of such statements is reasonably within the general scope of a prosecutor's authority.[3]

■ We also note that Barnes enjoys absolute immunity under the ITCA, which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... the performance of a discretionary function[.]" Ind.Code § 34–4–16.5–3(6). As was noted in *Foster*, "the [prosecutor's] duty to inform the public can be characterized as a discretionary function and thus would fall within the absolute immunity granted under the Indiana Tort Claims Act." 270 Ind. at 537, 387 N.E.2d at 449. Because Barnes was acting within the general scope of his prosecutorial authority when he made his statement to the press, he was performing a discretionary function when his statement was made. Barnes therefore enjoys, under the ITCA, absolute immunity from liability to Sims.

Notwithstanding our supreme court's holding in *Foster*, Sims argues that Barnes is not absolutely immune from liability for his statement to the press. Among the cases he cites in support of his argument are *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) and *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In *Burns*, it was held that a state prosecutor, against whom an action under 42 U.S.C. § 1983 was directed, did not enjoy absolute immunity for provid-

ing the police with legal advice. 500 U.S. at 492–96, 111 S.Ct. at 1942–45. In *Buckley*, it was held that, in an action brought under 42 U.S.C. § 1983, a prosecutor's "statements to the media are not entitled to absolute immunity." 509 U.S. at 277, 113 S.Ct. at 2617. These holdings of *Burns* and *Buckley* seem to have been supported, at least in part, by the notion that a prosecutor should not enjoy absolute immunity for action which is not "connected with the prosecutor's role in judicial proceedings," 500 U.S. at 494, 111 S.Ct. at 1943, or for action which has "no functional tie to the judicial process...." 509 U.S. at 277, 113 S.Ct. at 2618. Sims seems to argue that, because talking with the press has no connection with a prosecutor's role in judicial proceedings, *Burns* and *Buckley* compel a finding that Barnes is not entitled to absolute immunity from liability.

■ We are not convinced by Sims' argument. Unlike the present case, which involves a question of state tort law, *Burns* and *Buckley* were decided within the context of an action brought under 42 U.S.C. § 1983. "Section 1983, on its face admits of no defense of official immunity." *Buckley*, 509 U.S. at 268, 113 S.Ct. at 2612. Indeed, Section 1983 "on its face does not provide for *any* immunities...." *Burns*, 500 U.S. at 494, 111 S.Ct. at 1943 (quoting *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986)). It is therefore no surprise that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486, 111 S.Ct. at 1939. The Supreme Court has been " 'quite sparing' in recognizing absolute immunity for state actors in this context." *Buckley*, 509 U.S. at 269, 113 S.Ct. at 2613 (quoting *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555 (1988)). The Court has noted that "[a]lthough we have found immunities in § 1983 that do not appear on the face of the statute, '[w]e do not have a license to establish immu-

---

**3.** We stress, however, that a prosecutor enjoys absolute immunity from defamation liability only when his statement to the press informs the public about a case pending in his office. In a defamation action, a prosecutor whose statement does not so inform will be entitled only to qualified immunity, for such a statement will have been made outside the scope of the prosecutor's authority.

nities from § 1983 actions in the interests of what we judge to be sound public policy.'" *Buckley,* 509 U.S. at 268, 113 S.Ct. at 2613 (quoting *Tower v. Glover,* 467 U.S. 914, 922–23, 104 S.Ct. 2820, 2825–26, 81 L.Ed.2d 758 (1984)). According to the Court, "our role is to interpret the intent of Congress in enacting § 1983...." *Malley,* 475 U.S. at 342, 106 S.Ct. at 1096.

It is apparent that, in an action brought under 42 U.S.C. § 1983, the Supreme Court's decision whether to recognize absolute immunity for a state actor is guided by principles of interpretation relevant to that statute. But because Sims does not assert a Section 1983 cause of action, and instead grounds his claim in the common law of tort, we are guided by no such principles. Indeed, because Sims' theory of liability is defamation, we are free, as was the court in *Foster,* to effectuate the sound public policy which recognizes a prosecutor's absolute immunity from such liability. *Cf. Foster v. New,* 407 N.E.2d 271, 273 (Ind.Ct.App.1980) (noting that "the granting of absolute immunity from personal liability to prosecutors acting within the scope of their authority" is justified by "overriding public policy concerns"). Sims' reliance on *Burns* and *Buckley* is therefore misplaced.

Construing all the evidence in favor of Sims, we find that there is no genuine issue of material fact. We also find that Barnes, because he enjoys absolute immunity from liability under common law principles and the ITCA, is entitled to judgment as a matter of law. Summary judgment was therefore properly entered against Sims.[4]

Affirmed.

SHARPNACK, C.J., and HOFFMAN, J., concur.

---

4. We note, in the words of *Foster,* that "our decision will not leave actual and potential criminal defendants wholly unprotected from unscrupulous prosecuting attorneys.... [P]rosecutors are still subject to professional discipline if their actions stray beyond the bounds of ethical conduct." 270 Ind. at 537, 387 N.E.2d at 449.