**E.L.C. ELECTRIC, INC.,**
**Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF LABOR,**
**Appellee–Defendant.**

**No. 49A02–0410–CV–844.**

Court of Appeals of Indiana.

March 29, 2005.

Michael L. Einterz, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

Neil E. Gath, Geoffrey S. Lohman, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, Amicus Curiae Attorney.

## OPINION

BAKER, Judge.

Appellant-plaintiff E.L.C. Electric, Inc. (ELC) appeals from the trial court's entry of summary judgment for appellee-defendant Indiana Department of Labor (Department) on ELC's complaint alleging defamation and seeking damages and injunctive relief. ELC contends that the Department committed defamation by: 1) including ELC on its website listing as a "Common Construction Wage Violator" (CCW Violator), 2) contacting ELC's employees to notify them of ELC's failure to comply with the Common Construction Wage Act (CCWA),[1] and 3) informing a school corporation of ELC's status as a CCW Violator. Specifically, ELC urges that the Department's enforcement of the CCWA is preempted by ERISA,[2] that the Department's statements were not subject to privilege or immunity, and that the statements "could be interpreted by a trier of fact to be defamatory." Appellant's Br. p. 20. Finding that ERISA does not preempt the Department's enforcement of the CCWA, and the Department is entitled to absolute immunity from the defamation lawsuit, we affirm the trial court's entry of summary judgment in favor of the Department.

## FACTS

Sometime prior to August 2001, the Department undertook an audit to determine whether, on public works projects, ELC was in compliance with the CCWA. The Department concluded that ELC was not in compliance. ELC failed to fully cooperate with the investigation inasmuch as ELC required that inspections take place "only on Thursdays[ ]" and "was unresponsive to requests for records that are routinely provided by employers pursuant to [the Department's] authority to inspect

---

1. "[T]he common construction wage statute was first passed in 1935 as the 'prevailing wage law.'" *City of Jasper v. Collignon,* 789 N.E.2d 80, 95 (Ind.Ct.App.2003). The statutory provisions for such are generally referred to as the Common Construction Wage Act. *See* Ind.Code §§ 5-16-7-1 through 5-16-7-5.

2. 29 U.S.C. § 1144.

employer's records (IC 22–1–1–8 to—17)." Appellant's App. p. 28.

Further, after the Department commenced its audit and preliminarily concluded that ELC was not in compliance with the CCWA, it invited ELC to submit any additional records that could substantiate ELC's compliance. ELC did not provide additional documentation. Instead, in August 2001, ELC's counsel sent a letter to the Department advising that it believed that the onus was upon the Department to provide more details with regard to fringe benefit calculations[3] and warning the Department that it would pursue legal action against it if the Department informed ELC's "affected employees of their rights to file a proof of claim to recover any wages that may be due them." Appellant's App. p. 8.

■ The Department sent letters so informing ELC employees on September 4, 2001.[4] In a letter dated February 12, 2002, the Department responded to an inquiry from an assistant superintendent for Westfield–Washington Schools. In the Westfield letter, the Department included its list of CCW Violators. The list included ELC. The Westfield letter also noted that the CCWA requires that "any bids received by any of the contractors on this list should be verified as being responsive to the applicable Common Construction Wage."[5] Appellant's App. p. 9. The Westfield letter further noted that "violations of Indiana's Common Construction Wage Law may be prosecuted as a Class B misdemeanor."[6] Appellant's App. p. 9.

■ Also, by affidavit, the Department's Deputy Commissioner, A. Peter Rimsans, explained, *inter alia*, that the Department's procedures did not require a particular form of payment to employees in order to comply with the CCWA. In fact, the payments could take the form of cash, contributions to benefit plans, and alternative compensation "such as vacations or paid holidays."[7] Appellant's App. p. 110. ELC sought to include overhead costs, i.e., the costs of doing business, and pension

---

**3.** The Department's designated materials on summary judgment include evidence that its website contains "an Audit Procedures Manual ... that informs employers and the public at large concerning compliance with the Common Wage Act." Appellant's App. p. 61.

**4.** The CCWA creates a private right for employees to bring civil suits against employers for the underpayment of wages, *i.e.*, wages below the applicable prevailing wage. *See Stampco Const. Co., Inc. v. Guffey*, 572 N.E.2d 510, 513 (Ind.Ct.App.1991). According to ELC's materials, approximately twenty employees initiated lawsuits against ELC after receiving the letters from the Department informing them of their right to seek redress.

Another panel of this court recently decided *Burgess et al. v. E.L.C. Electric, Inc.*, No. 49A02–0406–CV–504, 825 N.E.2d 1, 2005 WL 646371 (Ind.Ct.App. Mar. 22, 2005), an appeal initiated by several ELC employees after summary judgment was granted for ELC on their wages claim. As is further discussed

*infra*, the *Burgess* court reversed the trial court's determination that ERISA preempted the employees' claim, and the cause was remanded for further proceedings. 825 N.E.2d at 15, 2005 WL 646371 at *12.

**5.** "It shall be a condition of a contract awarded under this chapter that the successful bidder and all subcontractors shall comply strictly with the determination [of the Common Construction Wage] made under this section." Ind.Code § 5–16–7–1(h).

**6.** "A contractor or subcontractor who knowingly fails to pay the rate of wages determined under this chapter commits a Class B misdemeanor." Ind.Code § 5–16–7–3 (also providing for forfeiture of contract payments for offenders with a prior offense).

**7.** For purposes of compliance with the CCWA, the term "wages" includes fringe benefits. *Union Township School Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 191 (Ind.Ct.App. 1998), *trans. denied*.

benefits to its executives "as constituting a portion" of the fringe benefit payments to its employees in order to comply with the CCWA. Appellant's App. p. 63. Without additional information that ELC had paid its employees in accordance with the CCWA, the Department continued to consider ELC a CCW Violator.

On September 12, 2001, ELC served its tort claim notice alleging a tort claim against the Department. The claim was denied.

On June 17, 2002, ELC filed its "Complaint for Defamation and Injunctive Relief." Appellant's App. p. 1. ELC alleged that the Department committed defamatory acts by accusing ELC "of criminal conduct by violating I.C. 5–16–7 [the Act] and accus[ing] E.L.C. of not paying its employees as required by law." Appellant's App. p. 1. ELC alleged that the defamation occurred on September 4, 2001 and thereafter through publication 1) on a website listing of employers not in compliance with the common wage requirements, 2) in correspondence to ELC employees, and 3) in correspondence to the Westfield School Corporation. ELC asserted that the Department knew the statements to be false. ELC requested $900,000 in damages for the loss of two contracts and projected damages from the publication of the information. Further, ELC requested, *inter alia,* that the Department be enjoined from: 1) maintaining a listing on any website of the CCW Violators "unless such violators have been established by a Court of law[ ]"; 2) disseminating information that ELC is a CCW Violator unless ELC is determined to be so by a court; 3)

disseminating any information to past or present employees of ELC or to prospective customers of ELC "relating in any way to compliance of or violation of the Common Wage Act"; and 4) "[v]iolating the due process rights of E.L.C., its owners and officers." Appellant's App. p. 4.

After the Department answered, raising thirteen affirmative defenses, the Department moved for summary judgment. In large part, the Department's summary judgment motion was based upon the truth of the statements, as well as privilege and immunity provisions.

ELC responded to the Department's request for summary judgment by asserting: 1) the Department had committed defamation per se by noting that the CCW Violators are subject to criminal penalties; 2) the Department's determination as to whether ELC was in compliance with the CCWA is preempted by federal ERISA law; 3) the Department failed to demonstrate that its statements were true;[8] and 4) the Department's statements were not protected by privilege or immunity.

On September 7, 2004, the trial court entered summary judgment for the Department. This appeal ensued.

## DECISION AND DISCUSSION

### I. Standard Of Review

We begin our discussion by setting forth the relevant standard of review. As we stated in *Little Beverage Co., Inc. v. De-Prez,* 777 N.E.2d 74, 77–78 (Ind.Ct.App. 2002), *trans. denied:*

---

8. Perversely, ELC argued that the Department's failure to submit ELC's records as to ELC's payment of wages and fringe benefits denied the trial court the ability "to determine ... whether there is or is not a factual dispute regarding the [Department's] statements as to whether or not E.L.C. violated the

Common Construction Wage Act." Appellant's App. p. 85. It is difficult to conceive of a circumstance where the failure to present the other party's evidence could be argued by the other party as a basis for staving off summary judgment.

[S]ummary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.... A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the non-movant required to come forward with contrary evidence. This court may not search the entire record but may only consider the evidence that has been specifically designated. All pleadings, affidavits, and testimony are construed liberally and in a light most favorable to the nonmoving party.

Additionally, the trial court's order granting or denying a motion for summary judgment is cloaked with the presumption of validity. *Pedraza v. City of East Chicago,* 746 N.E.2d 94, 99 (Ind.Ct.App.2001). And the purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind. Ct.App.1994).

### II. ELC's Claim

Initially, we note that to the extent that ELC's argument asserts that ERISA preempts the Department's role in enforcing the common wage statutes, the decision in *California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 328, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) is instructive. There, the United States Supreme Court determined that ERISA did not preempt a state's prevailing wage law that allowed payment of lower apprenticeship wages to employees participating in state-approved programs because the prevailing wage statute did not affect ERISA. *Id.*

■ Relying in large part upon *Dillingham,* this court recently put to rest the issue of preemption in *Burgess et al. v. E.L.C. Electric, Inc.,* No. 49A02–0406–CV–504, 825 N.E.2d 1, 2005 WL 646371 (Ind. Ct.App. Mar. 22, 2005). In *Burgess,* we concluded that "the CCWA, and the Employees' claims based thereon, are neither 'connected with' nor 'refer to' ERISA in such a manner as to warrant application of ERISA's preemption provision." 825 N.E.2d at 15, 2005 WL 646371 at *12. In light of such a pronouncement, both *Dillingham* and *Burgess* lead us to conclude that Indiana's common wage statutes and the Department's enforcement of the statutes are not preempted by ERISA.

■ We turn to ELC's substantive claims. ELC argues that the entry of summary judgment for the Department was erroneous because genuine issues of material fact "could" exist as to whether the Department's statements were defamatory and because the Department's statements were not subject to privilege or immunity. Here, the Department's claim of immunity under the Indiana Tort Claims Act (ITCA), Indiana Code section 34–13–3–1 through section 34–13–3–25, is dispositive.

By way of general background, we set out the statutory provisions regarding the CCWA and the Department in these circumstances. In relevant part, the CCWA provides:

(a) Any firm, individual, partnership, limited liability company, or corporation that is awarded a contract by the state, a political subdivision, or a municipal corporation for the construction of a public work, and any subcontractor of the construction, shall pay for each class of work ...

on the project a scale of wages that may not be less than the common construction wage.

Ind.Code § 5–16–7–1. With some exceptions, the CCWA requires employers to pay no less than a specified scale of wages to all employees employed on public works construction projects. I.C. § 5–16–7–1(d). The prevailing wage or common construction wage scale is set in each county by a committee of five persons by determining "the scale of wages that are most commonly paid in the community." *City of Jasper*, 789 N.E.2d at 93 (quoting *Union Township*, 706 N.E.2d at 192); *see also* I.C. § 5–16–7–1(b).

Through several provisions, the Department is charged with the duty to enforce laws related to labor, including the CCWA. Indiana Code section 22–1–1–8 describes the general powers and duties of the Commissioner of Labor:

The commissioner of labor may do the following: . . .

Make or cause to be made all necessary inspections to see that all of the laws and rules enacted or adopted for that purpose and that the department is required to enforce are promptly and effectively administered and executed.

I.C. § 22–1–1–8(1).[9] As to records for wages and hours, Indiana Code section 22–1–1–15 provides:

9. We are cognizant of subsection (2) of Indiana Code section 22–1–1–8 that provides both for publishing information relating to the enforcement of the labor laws and for not publishing specific information as to employers and trade secret-type information. That subsection provides that the commissioner may:

(2) Collect, collate, and *publish* statistical and other *information* relating to working conditions in this state and to the *enforcement* of this chapter and such rules as may be necessary to the advancement of the purposes of this chapter, but *no publicity* of any information involving the name or identity of any employer, employee, or other person, firm, limited liability company, or corporation shall be given. It shall be unlawful for the commissioner or any person to divulge, or to make known in any way not provided by law, to any person the operation, style of work, or apparatus of any employer, or the amount or sources of income, profits, losses, expenditures, or any part thereof obtained by him in the discharge of his official duties.

(Emphasis added). The first sentence of subsection (2) is internally inconsistent. A literal reading of the sentence indicates that the Department may publish information regarding its enforcement of the wage laws, among others; however, it may not publish any relevant information. Further, the portion of subsection (2) that would take away the Department's ability to supply relevant information

is inconsistent with the purpose of the CCWA—a specific provision with which the Department is charged with a duty to enforce. *See* Ind.Code § 22–1–1–16 (stating that the Department "shall" have authority to enter premises and inspect in order to enforce the CCWA); *see also* Ind.Code § 5–16–7–1 (requiring public works contracts to be conditioned upon compliance with the CCWA).

That neither the parties nor amicus refer to this section reflects their apparent cognizance of the tension between portions of subsection (2) and the statutes granting the public access to information that place paramount importance on the public's entitlement "to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." *See Indiana Newspapers v. Trustees Of Indiana Univ.*, 787 N.E.2d 893, 901 (Ind.Ct.App.2003) (quoting Indiana Code section 5–14–3–1, the preamble to the Indiana Access to Public Records Act (APRA)).

In the end, we need not engage in a lengthy statutory construction analysis in the present case inasmuch as our resolution is in no way dependent upon such analysis. However, we note that the interconnectedness of our various statutory frameworks will, on occasion, lead to conflicting provisions, and until those conflicts arise in legal proceedings, our legislature rarely has an opportunity to revisit those provisions. When such conflicts appear on the judicial radar screen, we feel duty-bound to call them to the attention of those empowered to correct them.

(a) Every employer, employee, owner or other person shall furnish to the commissioner of labor any information which the commissioner ... is authorized to require, and shall make true and specific answers to all questions, whether submitted orally or in writing, which are authorized to be put to him.

(b) Every employer shall keep a true and accurate record of the name, address or occupation of each person employed by him, and of the daily and weekly hours worked by each such person and of the wages paid each pay period to each such person. Provided however, [t]hat the record of the daily and weekly hours worked or of the wages paid shall not be required for any person employed in a bona fide executive, agricultural, domestic, administrative or professional capacity or in the capacity of an outside salesman. No employer shall make or cause to be made any false entries in any such record.

Indiana Code section 22–1–1–16 specifically relates to enforcement of the CCWA and states:

The commissioner ·of labor and his authorized representative shall have the power and the authority to enter any place of employment for the purposes of collecting facts and statistics relating to the employment of workers and of making inspections for the proper enforcement of all of the labor laws of this state, including IC § 5–16–7. No employer or owner shall refuse to admit the commissioner of labor or his authorized representatives to his place of employment.

These interrelated provisions make clear that the Department is charged with investigating and enforcing the CCWA. It is empowered to conduct inspections and generally ensure that employers comply with the CCWA. Employers have a corresponding duty to cooperate with the Department. Here, ELC made no attempt to cooperate, or refute the Department's evidence that it had failed to cooperate-leaving the Department with no choice but to conclude that ELC had not complied with the CCWA. On summary judgment, the nonmoving party cannot ignore evidence favorable to summary judgment. "Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the burden shifts and the nonmoving party must respond by designating specific facts establishing a genuine issue for trial." *Coleman v. Charles Court, LLC,* 797 N.E.2d 775, 787 (Ind.Ct.App.2003). Although this case turns on immunity, we note that ELC wholly failed to designate evidence to refute the Department's evidence that it had, in fact, correctly concluded that ELC was not in compliance with the CCWA.

■ Also, the authority granted to the Department through the above statutory provisions leads us to flatly reject ELC's assertion that the Department's statutory enforcement obligations are limited to referral to a prosecutor or to the State Attorney General for the institution of criminal charges. *See Stampco,* 572 N.E.2d at 513 (rejecting employer's contention that the CCWA provides solely for criminal penalties and is without provisions for a private cause of action). The above provisions allow the Department the discretion to take measures to ensure compliance absent its demonstration of the employer's "knowing" violation of the CCWA, as is required by Indiana Code section 22–1–1–18. *Cf. St. Vincent Hosp. and Health Care v. Steele,* 766 N.E.2d 699, 705 (Ind.2002)

(explaining differences in Wage Payment Statute and Wage Claims Statute, the latter requiring a claim to be submitted to the Department for the commissioner to investigate, enforce the statute, and institute or cause to be instituted actions for penalties and forfeitures).

Having said that, we turn to the dispositive analysis. Pursuant to the ITCA, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . the performance of a discretionary function[.]" *Sims v. Barnes*, 689 N.E.2d 734, 737 (Ind.Ct.App.1997) (quoting Indiana Code section 34-4-16.5-3(6), repealed and reenacted as Indiana Code section 34-13-3-3(7)). In *Sims*, we determined that a prosecutor's comments to the media were made in fulfillment of the "duty to inform the public[,]" and could "be characterized as a discretionary function and thus would fall within the absolute immunity granted under the Indiana Tort Claims Act." *Sims*, 689 N.E.2d at 737 (quoting *Foster v. Pearcy*, 270 Ind. 533, 387 N.E.2d 446, 449 (1979)). We concluded that because the prosecutor was acting within the general scope of his duties to inform the public regarding a pending case within his office, he was performing a discretionary function and, therefore, pursuant to both common law principles and the ITCA, he enjoyed absolute immunity from liability to the plaintiff on the plaintiff's defamation claim. *Sims*, 689 N.E.2d at 737–38; *see also Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452–54 (Ind.2000) (holding in context of defamation suit against fire chief for statements made during inspection that "[i]f employees were easily declared outside the scope of the [ITCA] for things they say during the otherwise ordinary course of their employment, the threat to 'their independent judgment necessary to carry out their duties[ ]' . . . would be greater"). We also noted that in a defamation action, statements that do not so inform the public, would be "entitled only to qualified immunity, for such a statement will have been made outside the scope of the prosecutor's authority." *Sims*, 689 N.E.2d at 737.

In the present circumstances, the Department, through its employees, was engaged in fulfilling its inspection and enforcement duties with regard to the discretionary function of informing the public, employers engaged in public works projects, and the entities letting bids for such projects of the need to, as well as, failure to comply with the CCWA. As a result, the Department was entitled to absolute immunity from liability to ELC on its defamation claim, and the trial court's entry of summary judgment for the Department was proper.

The judgment of the trial court is affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.