

FILED
Mar 05 2025, 8:50 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Richard Kelly and Ashley Kelly,

*Appellants-Plaintiffs*

v.

Anthony Sommer,

*Appellee-Defendant*

March 5, 2025

Court of Appeals Case No.
24A-CT-1471

Appeal from the Clinton Circuit Court

The Honorable Bruce E. Petit, Special Judge

Trial Court Cause No.
12C01-2211-CT-921

**Opinion by Judge Weissmann**
Judge May concurs and
Judge Brown concurs with a separate opinion.

**Weissmann, Judge.**

[1] This case arises from a public dispute between Clinton County's Sheriff and its Prosecutor. Sheriff Richard Kelly and his wife, Ashley Kelly, sued County Prosecutor Anthony Sommer for defamation and emotional distress after Sommer spoke to the media about a State Board of Accounts (SBOA) investigation into the Kellys' management of jail funds. The trial court dismissed the lawsuit at Sommer's request, finding his actions were protected by common law prosecutorial immunity. But the application of immunity in this case turns on disputed factual questions about the nature and scope of Sommer's conduct as it relates to his prosecutorial function—questions that remain unresolved at this early stage. We therefore reverse.[1]

## Facts

[2] Sheriff Kelly and Prosecutor Sommer initially had a "friendly" relationship, but it quickly "deteriorated" over disputes about law enforcement authority in the county. Appellant's Br., p. 6. Sommer then raised concerns about the Kellys' management and operation of the local jail commissary. Upon taking office, Sheriff Kelly had appointed his wife as both Jail Matron and Commissary Manager of the Clinton County Jail. Under this arrangement, Mrs. Kelly earned $1,500 per week in each role for a total weekly compensation of $3,000.

---

[1] We conducted oral argument in this case on January 16, 2025, at the University of Southern Indiana. We thank the university administration and students for their generosity in hosting this argument. We also thank the parties' counsel for their participation and advocacy.

Sommer reported his concerns about this arrangement to the SBOA, requesting it open an investigation.

[3] Soon after, a local journalist published an article about the SBOA investigation, reporting that Mrs. Kelly earned $1,500 per week to manage the commissary and quoting a County Commissioner as opining that such salary was higher than any county employee. The article, however, noted that six other county employees earned equal or higher weekly compensation.

[4] Believing the reported salary information for Mrs. Kelly to be incomplete, Sommer contacted the journalist to "correct the record and provide additional information in order to keep things balanced." App. Vol. II, p. 19. Sommer met with the journalist and explained that the article failed to mention that Mrs. Kelly received an additional $1,500 weekly as Jail Matron, meaning her total compensation was $3,000 per week. Sommer then provided the journalist with a jail commissary report that he claimed was produced by Sheriff Kelly and his department. The report appeared to "show transfers and disappearances of millions of dollars." *Id.* at 22. The Kellys claim that the report was fake and was not generated by the Sheriff's Department. Though they are not certain of its source, the Kellys believe the report was given to Sommer by the county attorney as part of a conspiracy to harm the Kellys' reputation.

[5] Sommer advised the journalist that he was in "no better position" to know the truth of the matter, explaining that he was not involved in the SBOA investigation. *Id.* at 20. Sommer also said that if the investigation resulted in

criminal charges, he would not be the prosecutor overseeing such case. And according to the Kellys, Sommer requested the interview be off the record.

[6] When Sommer's statements from that meeting later became public, Sommer told the media that, when he spoke with the journalist, he "was not making any statement on the pending criminal investigation or audit, and that [he] had no findings from either one." *Id.* at 22.

[7] Based on these actions, the Kellys filed suit against Sommer alleging defamation and intentional infliction of emotional distress. They claimed the commissary report was fabricated and that Sommer knowingly shared the false report to harm the Kellys' reputation. In response, Sommer moved to dismiss the complaint for failing to state a claim upon which relief can be granted under Indiana Trial Rule 12(B)(6). He claimed he was entitled to prosecutorial immunity under both the common law and the Indiana Tort Claims Act (ITCA).

[8] After a hearing on the motion, the trial court agreed with Sommer and granted the motion to dismiss. The court found that Sommer used his position as prosecutor to secure the meeting with the journalist and discussed only the SBOA investigation that he had sparked. Finding the issue of common law immunity dispositive, the court did not reach the merits of the ITCA immunity claim. The Kellys appeal the dismissal of their claim.

## Discussion and Decision

[9] The procedural posture of this case significantly constrains our review and shapes our analysis of both immunity claims. A ruling on a motion to dismiss, which we review de novo, tests only the legal sufficiency of the complaint, not the facts supporting it. *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 901-02 (Ind. 2024). This standard imposes a high burden on the moving party (here, Sommer): we must accept all pleaded facts as true, unless contradicted by other allegations or exhibits incorporated in the pleadings. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). Moreover, we must view these pleadings in the light most favorable to the non-moving party (here, the Kellys) and draw every reasonable inference in the non-movant's favor. *Id.*

[10] This demanding standard is particularly relevant here, as a dismissal for failure to state a claim can be affirmed only if the pleaded facts "are incapable of supporting relief under any set of circumstances." *Id.* at 135. While immunity is a threshold question that "bars recovery even where ordinary tort principles would impose liability," *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1225 (Ind. 2009), the burden of establishing immunity rests squarely on the party seeking it (here, Sommer). *Id.* at 1226. At this early stage, Sommer must demonstrate that he is entitled to immunity even when viewing all alleged facts in the light most favorable to the Kellys.

[11] The Kellys address both kinds of immunity invoked by Sommer in his motion to dismiss. Common law prosecutorial immunity applies in narrow situations but is absolute—it completely shields prosecutors, but only for actions taken within their official prosecutorial function. *See Foster v. Pearcy*, 387 N.E.2d 446, 449 (Ind. 1979). ITCA immunity is broad but fact-dependent—it protects any government employee's conduct that falls within the scope of their employment. *See Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020). ITCA immunity "operates similarly, but not identically" to common law immunity, *Cantrell v. Morris*, 849 N.E.2d 488, 495 (Ind. 2006), as the doctrines have developed distinct but occasionally overlapping bodies of caselaw interpreting their respective scopes.

[12] Here, the Kellys argue that neither type of immunity has been established at this stage. First, they claim Sommer failed to demonstrate that common law immunity applies because his actions did not serve any legitimate prosecutorial function. Second, they argue that factual issues remain as to whether Sommer's conduct falls within the scope of his employment as required for ITCA immunity. Given the stringent standard governing motions to dismiss, where we must accept all pleaded facts as true and view them in the light most favorable to the Kellys, we agree that dismissal at this early stage was improper.

## I. Facts Most Favorable to Kellys Do Not Show Sommer's Conduct Falls Within His Prosecutorial Function

[13] While prosecutors enjoy immunity for actions taken within the general scope of their authority, that authority has clear boundaries. *See Foster*, 387 N.E.2d at

449. To determine whether immunity applies, courts look to "the nature of the function performed, not the identity of the actor who performed it." *Marion Super. Ct. Prob. Dep't v. Trapuzzano*, 223 N.E.3d 282, 288 (Ind. Ct. App. 2023). This function-based analysis requires careful examination of the facts, making it particularly challenging to resolve at the motion to dismiss stage.

[14] Both parties rely on *Foster v. Pearcy* and subsequent appellate interpretations of it to analyze when prosecutorial immunity applies. In *Foster*, our Supreme Court held that prosecutors are immune when fulfilling their duty to "keep the public informed as to the activities of [the prosecutor's] office," including "[the prosecutor's] investigative, administrative and prosecutorial activities." *Foster*, 387 N.E.2d at 449. Thus, immunity protects statements made about "cases which are pending in [the prosecutor's] office." *Id.* at 448. Applying this rule to the facts before it, the Court found the prosecutor was immune because his allegedly defamatory statements to the media concerned a case then pending in his office.

[15] The *Foster* Court's repeated use of possessive language—"[*the prosecutor's*] investigative, administrative and prosecutorial activities" and "*his* office"— demonstrates that immunity applies only when prosecutors communicate about the activities of their own office. *Id.* at 449 (emphasis added). This Court has consistently reaffirmed this principle. In *Sims v. Barnes*, 689 N.E.2d 734 (Ind. Ct. App. 1997), we emphasized that immunity applies only when a "statement to the press informs the public about a case pending in *the prosecutor's* office," while statements that "do not so inform" fall "outside the scope of the

prosecutor's authority." *Id.* at 737 n.3 (cleaned up and emphasis added). Similarly, in *American Dry Cleaning & Laundry v. State*, 725 N.E.2d 96 (Ind. Ct. App. 2000), we restated *Foster* as establishing that "a prosecutor has a duty to keep the public informed about pending cases and the activities *of his or her office*." *Id.* at 99 (emphasis added).

[16] Sommer's allegedly defamatory actions appear to fall outside these established boundaries. Sommer provided an allegedly fabricated report showing the disappearance of large sums of money during a private, off-the-record meeting with a single journalist. Beyond his general argument that he was informing the public, Sommer presents no plausible prosecutorial function that would be served by disseminating fraudulent information. Indeed, providing allegedly false financial documents in a private meeting appears more aligned with personal interests than any legitimate prosecutorial duty to inform the public about office activities.

[17] Also, when Sommer made the statements in question, no case was pending against the Kellys in Sommer's office and no criminal charges had been filed against the Kellys. This distinguishes Sommer's conduct from that of the prosecutors in *Foster*, *Sims*, and *American Dry Cleaning*, who were each sued for defamation based on statements about cases pending in their office. Moreover, the prosecutor's office was not involved with the external SBOA investigation, and therefore, Sommer's statements did not relate to the activities of the prosecutor's office. In fact, Sommer told the journalist that he was "in no better position" to know the truth of the matter and later confirmed that, during his

conversation with the journalist, he was "not making any statement on the pending criminal investigation or audit" and had "no findings from either one." App. Vol. II, pp. 20, 22.[2] At the time Sommer met with the journalist, the investigation into the Kellys was an external matter outside the scope of Sommer's authority as prosecutor.

[18] Sommer's argument that his conduct is nonetheless protected under common law immunity confuses the relevant case law. He contends his actions were within his prosecutorial function because he informed the public about a "case that had *originated* from his office" and he maintained an "interest in [the investigation's] outcome." Appellee's Br., pp. 15-16 (emphasis added). But this reasoning would improperly extend immunity beyond the prosecutor's office to any case where a prosecutor had even tangential historical involvement or a remote interest.

[19] For instance, under Sommer's theory, it appears a prosecutor could claim immunity for statements about: a political rival's activities after dismissing charges against them; a tax fraud investigation after referring it to the Department of Revenue; or even someone's divorce proceedings simply because they were once a criminal defendant. Each example stretches immunity

---

[2] Although Sommer's reference to "*the* pending criminal investigation" may suggest his office had an open investigation, the record is clear that no such investigation existed at the time of Sommer's conversation with the journalist. App. Vol. II, p. 22 (emphasis added). Sommer referred to "the pending criminal investigation" in his statement to the media six months after meeting with the journalist, and in the interim, criminal charges had been initiated against the Kellys. *Id.*

well beyond its intended scope of protecting statements about the actual activities of the prosecutor's office.

[20] At this early stage, viewing the facts in the light most favorable to the Kellys, we cannot conclude that Sommer's conduct fell within his prosecutorial function. The record shows Sommer used his official position to share allegedly fabricated documents about an investigation his office was not handling, during an off-the-record meeting he requested, while disclaiming any official involvement. Because Sommer has not carried his burden of showing his actions were protected by common law immunity, dismissal on this basis was improper.

## II. Immunity Under the ITCA Remains a Question of Fact

[21] Though the trial court based its decision to grant Sommer's motion to dismiss solely on common law immunity, we are permitted to look to any basis in the record to affirm the dismissal, including immunity under the ITCA. *See Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015). The ITCA "governs lawsuits against political subdivisions and their employees. Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). However, the procedural posture of this case—a motion to dismiss— impacts our analysis of this issue.

[22] Whether conduct falls within the scope of employment is generally a question of fact, *id.* at 473, making it ill-suited for resolution at this early stage of the

lawsuit. However, if "the facts are undisputed and would not allow a jury to find the tortious acts were within the scope of employment," the court "may conclude as a matter of law that the acts were not in the scope of employment." *Burton*, 140 N.E.3d at 852.

[23]     Sommer contends his actions were within the scope of his employment as a matter of law because the facts of Sommer's meeting with the journalist are largely undisputed. But determining the scope of employment is a fact-sensitive analysis with "no precise formula." *Id.* at 853. Conduct is within the scope when it is "incidental to authorized conduct or furthers the employer's business to an appreciable extent." *Id.* at 852. But actions that "flow from a course of conduct that is independent of activities that serve the employer" fall outside the scope. *Id.* (quoting *Cox v. Evansville Police Dep't,* 107 N.E.3d 453, 464 (Ind. 2018)). Courts consider various factors, including the employee's purpose and authorized duties, and the employer's policies and degree of control. *See Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000); *Stropes by Taylor v. Heritage House Child.'s Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989).

[24]     Here, the undisputed facts cut both ways. While Sommer used his official position as prosecutor to arrange the meeting with the journalist and discussed matters related to county business, he also disclaimed any official involvement in the investigation, requested the conversation be off the record, and allegedly shared a fabricated financial report which he falsely attributed as coming from the Kellys. Whether these actions flowed from Sommer's official duties or a

personal vendetta is a "particularly fact-sensitive issue" for the jury. *Cox,* 107 N.E.3d at 464; *see also Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 702 (Ind. Ct. App. 2006) ("If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury.").

A reasonable jury could find that Sommer's conduct—particularly the sharing of fraudulent information in an off-the-record conversation about an investigation his office was not handling—falls outside the scope of his employment, and thus outside of ITCA immunity.

## Conclusion

At this early stage of the proceedings, viewing all well-pleaded facts in the light most favorable to the Kellys, Sommer has not met his burden to obtain dismissal based on immunity. We reverse the trial court's granting of Sommer's motion to dismiss.

Judge May concurs.
Judge Brown concurs with a separate opinion.

ATTORNEY FOR APPELLANT

Brian R. DeHem
DeHem Law, LLC
Noblesville, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

**Brown, Judge, concurs with separate opinion.**

[27] I concur with my colleagues that, at this early stage in the proceedings, Sommer has not met his burden to obtain dismissal of the Kellys' complaint based on either common law or ITCA prosecutorial immunity.[3] However, I write separately to emphasize that I am constrained to do so based upon the narrow language used by the Indiana Supreme Court in *Foster v. Pearcy,* 270 Ind. 533, 387 N.E.2d 446 (1979), *cert. denied* 445 U.S. 960 (1980), and its progeny.

[28] As noted by my colleagues, the *Foster* Court's repeated use of possessive and temporal language to set clear boundaries as to when absolute prosecutorial immunity applies, and this Court's consistent reaffirmance of this principle, cut against Sommer's assertion that his alleged defamatory statements about the Kellys, when no case was pending against the Kellys in his office and no criminal charges had yet been filed, were part of fulfilling a prosecutor's duty "to keep the public informed about pending cases and the activities *of his or her office*." *American Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 99 (Ind. Ct. App. 2000) (emphasis added). While I am not convinced that the *Foster* Court intended for its language to be so narrowly interpreted regarding the boundaries of absolute immunity, I cannot disagree with my colleagues' well-reasoned interpretation. Nor can I dispute the conclusion that a "function-based" analysis as recently outlined in *Marion Super. Ct. Prob. Dep't v. Trapuzzano,* 223

---

[3] Sommer conceded at oral argument that the immunity analysis is essentially the same under both the common law and the ITCA.

N.E.3d 282, 288 (Ind. Ct. App. 2023), *trans. denied*, requires careful examination of the facts, making it particularly challenging to resolve at the motion to dismiss stage.

[29] Still, I think it is important to acknowledge that in recognizing this narrowly construed doctrine of absolute prosecutorial immunity, the *Foster* Court explained:

> The prosecutor, as an elected law enforcement official, has a duty to inform the public regarding cases which are pending in his office. He must be able to exercise his best judgment, independent of other irrelevant factors, in serving as the State's advocate and in communicating such developments and events to the public. Were a prosecutor granted only a *qualified immunity*, the threat of lawsuits against him would undermine the effectiveness of his office and would prevent the vigorous and fearless performance of his duty that is essential to the proper functioning of the criminal justice system.

*Foster*, 270 Ind. at 536, 387 N.E.2d at 448-449 (emphasis added). In *Sims v. Barnes*, this Court followed *Foster's* rationale in determining that alleged defamatory statements made by a prosecutor to the press about a criminal case pending in the prosecutor's office enjoyed absolute immunity because such statements were made "within the general scope of a prosecutor's authority." 689 N.E.2d 734, 737 (Ind. Ct. App. 1998), *trans. denied*. We emphasized, however, "that a prosecutor enjoys absolute immunity from defamation liability only when his statement to the press informs the public about a case pending in his office. In a defamation action, a prosecutor whose statement does not so

inform *will be entitled only to qualified immunity*, for such a statement will have been made outside the scope of the prosecutor's authority." *Id.* at 737 n.3 (emphasis added).

[30] Upon review of the record and the parties' briefs, it does not appear that Sommer made any argument that he could be entitled to qualified immunity for his alleged defamatory statements made against the Kellys. Upon further factual development, Sommer may be able to establish as a matter of law that he is entitled to absolute immunity using a "function-based analysis," and our case law instructs that qualified immunity is a possible alternative path.

[31] I thus concur with the majority.