# FOR PUBLICATION





FILED
Apr 18 2013, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT S. RIFKIN**
Maurer Rifkin & Hill, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL L. EINTERZ, JR.**
Einterz & Einterz
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM WRESSELL, | ) |
| | ) |
| Appellant/Cross-Appellee/Plaintiff, | ) |
| | ) |
| vs. | ) No. 06A01-1301-PL-5 |
| | ) |
| R.L. TURNER CORPORATION, | ) |
| | ) |
| Appellee/Cross-Appellant/Defendant. | ) |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1201-PL-11

**April 18, 2013**

**OPINION – FOR PUBLICATION**

**BRADFORD, Judge.**

Between September 15, 2009, and June 20, 2010, William Wressell was employed by R.L. Turner Corporation ("RLTC") as a concrete foreman and worked on two of RLTC's construction projects. Both projects were public works projects subject to the Indiana Common Construction Wage Act ("CCWA"), and Wressell was classified and paid as a skilled cement mason pursuant to the CCWA. Wressell eventually brought suit against RLTC, claiming that he was significantly underpaid by RLTC for his work. The trial court granted summary judgment in favor of RLTC, and Wressell now appeals. Wressell argues that the trial court erred in granting summary judgment because the designated evidence shows that much of the work he did for RLTC was that of either a skilled carpenter or a skilled laborer, work that, overall, entitled him to a higher wage and higher fringe benefits. RLTC responds to these arguments and cross-appeals, contending that Wressell has flagrantly disregarded the Indiana Rules of Appellate Procedure such that it is entitled to an award of attorney's fees. Concluding that the trial court erred in entering summary judgment in favor of RLTC, we reverse the judgment of the trial court and remand for further proceedings. We further conclude that RLTC is not entitled to an award of attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Between September 15, 2009, and June 20, 2010, RLTC employed Wressell as a skilled cement mason. Wressell worked on two projects for RLTC, the Gatewood wing of the Mechanical Engineering Building at Purdue University ("the Gatewood Project") and the Informatics and Classroom Addition at Indiana University ("the Informatics Project").

2

Wressell worked 677 hours on the Gatewood Project, a project whose common construction wage scale provided that a skilled cement mason was to be paid an hourly wage of $24.25 and fringe benefits of $10.68 per hour. All told, a skilled cement mason would have been entitled to be paid a total of $23,647.61 for working 677 hours on the Gatewood project. RLTC paid Wressell wages of $18,344.98 and fringe benefits of $6514.42 for his work on the Gatewood Project, a total of $24,859.40. A skilled carpenter working on the Gatewood Project would have been entitled to an hourly wage of $24.90 and fringe benefits of $12.80 per hour. A skilled laborer working on the Gatewood Project would have been entitled to an hourly wage of $21.08 and fringe benefits of $9.78 per hour.

Wressell worked 452.5 hours on the Informatics Project, a project whose common construction wage scale provides that a skilled cement mason was to be paid an hourly wage of $21.75 and fringe benefits of $8.52 per hour. All told, a skilled cement mason would have been entitled to be paid a total of $13,697.18 for working 452.5 hours on the Informatics Project. RLTC paid Wressell wages of $12,044.50 and fringe benefits of $3481.07 for his work on the Informatics Project, a total of $15,525.57. A skilled carpenter working on the Informatics Project would have been entitled to an hourly wage of $26.58 and fringe benefits of $12.02 per hour. A skilled laborer working on the Informatics Project would have been entitled to an hourly wage of $21.58 and fringe benefits of $10.39 per hour.

RLTC made several other payments on Wressell's behalf that it credited against its fringe benefit obligations to him. Specifically, RLTC paid (1) $268.80 to a benefit

3

consultant to provide employees with claims assistance, if needed; (2) $128.70 to a pension plan; (3) a $1397.00 assessment charged to Wressell to recover a portion of fringe benefits paid by RLTC on his behalf; (4) $245.25 for mandatory first aid and CPR training; (5) $225.00 for materials used in training; (6) $1352.00 paid to reimburse Wressell for gasoline used in driving to and from the Projects; and (7) a $1260 assessment charged to Wressell to pay RLTC to administer his benefits.

On or about October 10, 2010, Wressell filed common construction wage complaints with the Indiana Department of Labor ("IDOL"), claiming that RLTC "switched pay rate in middle of job [and/or] never agreed upon rate" for the Gatewood and Informatics Projects. Appellant's App. pp. 31, 33. Although the IDOL opened investigations into Wressell's complaints, it did not resolve them, "primarily because [RLTC] either failed or refused to cooperate in the investigations and refused to produce the records necessary for [IDOL] to determine whether [RLTC] paid wages in accordance with the [CCWA]." Appellant's App. p. 35. On December 29, 2011, the Indiana Attorney General's office authorized Wressell to pursue his claims in court. On January 5, 2012, Wressell sued RLTC, contending that he had been underpaid for his work on the Gatewood and Informatics Projects.

On June 29, 2012, RLTC filed a motion for summary judgment, alleging that there existed no genuine issue of material fact regarding whether Wressell had been paid the wages and fringe benefits to which he was entitled. *Inter alia*, RLTC designated an affidavit from its Chief Financial Officer ("CFO") James Gann, in which he averred that the wages and fringe benefits paid to Wressell for his work on the Gatewood and

4

Informatics Projects were in compliance with the common construction wage scale in place for each project.

On August 27, 2012, Wressell filed a response to RLTC's summary judgment motion and cross-moved for summary judgment. The basis of Wressell's motion was his contention that much of the work he performed on the Gatewood and Informatics Projects was actually as a carpenter or laborer, work for which, overall, he was entitled to be paid more. Wressell also contended that many of RLTC's payments credited against its fringe benefit obligation to him were, in fact, not for fringe benefits.

Wressell designated his affidavit, in which he averred that he "provided work as a skilled carpenter [to RLTC] handling all materials necessary to prepare and dismantle forms for pouring concrete." Appellant's App. p. 204. For the Gatewood Project, Wressell averred that, of 677 hours worked, 424 regular and 15 overtime hours were as a carpenter, 219 regular and 7 overtime hours were as a cement mason, and 11 regular and 0.5 overtime hours were as a laborer. For the Informatics Project, Wressell averred that, of 452.5 hours worked, 320 regular and 21.5 overtime hours were as a carpenter, 109 regular hours were as a cement mason, and 2 regular hours were as a laborer.

Wressell also averred to the following:

15. The distance between [RLTC]'s Zionsville office and the Gatewood [Project] is in excess of 50 miles (100 miles round trip). The distance between [RLTC]'s Zionsville office and the [Informatics Project] is in excess of 70 miles (140 miles round trip).
16. When I worked at the Gatewood and Informatics Projects, I paid an average of $2.66 per gallon to fuel my pick-up truck, and it cost me in excess of $17.00 a day in gas to drive to and from the Gatewood Project … and in excess of $24.00 per day to drive to and from the Informatics Project[.]

5

17. [RLTC] paid me $2.00 per hour to apply to the cost of gas for my truck for each hour I worked at the Gatewood Project …; accordingly, if I worked 8 hours … I was given $16.00 to cover gas. If I worked less than 8 hours, the amount I was given for gas was reduced accordingly. [RLTC] gave me no money for gas to drive the 140 miles to and from Bloomington, Indiana for the days I worked on the Informatics Project.

18. I was not required by [RLTC] to document the miles I drove each day to the common construction wage worksites and [RLTC] did not treat the gas payments to me as taxable fringe benefits or report the gas payments as income to the IRS. [RLTC] did not provide transportation for me to and from its out-of-town worksites.

19. I spent more than the $1,352.00 [RLTC] gave me in gas money to drive to [RLTC]'s work sites in Lafayette, Indiana and Bloomington, Indiana.

20. [RLTC] did not provide me with a pension or pension benefit, and [RLTC] did not contribute any money to a pension for me.

Appellant's App. pp. 205-06.

Wressell also designated an affidavit from Monte Moorhead, in which Moorhead

averred, *inter alia*, that

3. I have been employed as a Field Auditor with the Indiana Department of Labor, Wage and Hour Division (IDOL) since 2009. Prior to my employment with the IDOL, I spent 15 years in corporate accounting as a controller for a manufacturing/service company and an additional 9 years of professional employment with two CPA firms as a staff accountant.

4. As a field auditor, I audit the pay practices of Indiana employers who are required to comply with [the CCWA].

5. Under audit guidelines established by IDOL, an employee working on [a] common construction wage project must be paid for the specific duties and tasks he performs and in accord with the common construction wage job classification into which those fall.

6. An employee who does the work of a carpenter must be paid the common construction wage (CCW) established for the job classification of a carpenter even if the employee is given a different job title by his employer.…

7. Employees may work in more than one job classification on a project. If they do, the work performed in each job classification is treated separately for the purposes of an IDOL audit. An employee's job classification depends on the specific tasks the employee performs.

8. To the extent an employee is engaged in planning, laying out, building and dismantling forms used in shaping, pouring and curing concrete, or in building scaffolding and weather proofing protection used in concrete work, the employee is doing the work of a form or rough carpenter, and his work falls under the job classification of carpenter.

Appellant's App. pp. 209-10.

Moorhead also averred that

[t]he IDOL relies, in part, on O*Net, an internet service, for guidance in classifying the work of employees on common construction wage jobs. O*Net replaces the Directory of Occupational Titles [("the Directory")] formerly published by the U.S. Department of Labor. The Directory … described in detail the duties of various job classifications. The U.S. Department of Labor as well as other governmental agencies and employers now use O*Net for job classification.

Appellant's App. p. 210.

Wressell designated the Directory descriptions for "carpenter, rough[,]" "form builder[,]" and "cement mason" and the O*Net summary reports for "Rough Carpenters" and "Cement Masons and Concrete Finishers." Appellant's App. pp. 214, 215, 223, 226, 228. The Directory description for rough carpenter reads, in part, "Builds rough wooden structures, such as concrete forms[.]" Appellant's App. p. 214. The Directory description for form builder lists an alternate job title as "carpenter, form" and reads, in part, "Constructs built-in-place or prefabricated wooden forms, according to specifications, for molding concrete structures[.]" Appellant's App. p. 223. The Directory description for cement mason reads, in part, "May direct subgrade work, mixing of concrete, and setting of forms." Appellant's App. p. 226.

The O*Net summary report for rough carpenters reads, in part, "Build rough wooden structures, such as concrete forms, scaffolds, tunnel, bridge, or sewer supports,

7

billboard signs, and temporary frame shelters, according to sketches, blueprints, or oral instructions." Appellant's App. p. 215. The O*Net summary report for cement masons and concrete finishers reads, in part, "Set the forms that hold concrete to the desired pitch and depth, and align them." Appellant's App. p. 228. None of the job descriptions Wressell designated indicate the list of tasks associated with that particular job is exhaustive.

Finally, regarding fringe benefits, Moorhead averred the following:

12. Employer expenses that are a part of its regular administrative overhead costs of doing business, or that are primarily for the benefit of the employer, are not treated by the IDOL as employee fringe benefits. Expenses that are paid by a company to operate its business and to achieve increases in productivity and profit are not considered fringe benefits where the expenses are not a direct cash payment or other direct benefit to the employee; consequently, even if an employee gets an incidental benefit, the cost is not treated as a fringe benefit.

13. When an employee is required to undergo employer mandated training, and the training is given at the discretion and the control of the employer, the IDOL would not allow the employer to claim a fringe benefit allocation or credit for the training, nor is the employer entitled to claim as a fringe benefit the cost it pays to provide books or materials to its employees for the training.

14. As an example, if a company requires an employee to take first aid or CPR training, its cost for providing such training would not be considered by the IDOL as a fringe benefit to the employee because the training was required by the Company and the employee was under the direction and control of the employer.

15. If the employer has a pension plan, but an employee does not participate in the plan, and the employer does not make any contributions on the employee's behalf, then the employer's expenses for the pension plan are not credited by the IDOL as a fringe benefit to the employee.

16. If an employer pays the cost of providing a benefit plan, but an employee chooses not to elect to participate in the plan, the IDOL would not allow the employer to claim a fringe benefit credit for its expenses.

17. The IDOL does not consider an employer's administrative costs to provide benefits to employees as a fringe benefit. It makes no

8

difference whether the employer pays a third party to administer the benefits or administers the benefits in-house.

18. If employees are given a fixed dollar amount per hour to reimburse them for having to spend their own money on gas to drive to and from a company's principal office to remote construction sites, and the money paid is not reported by the employer to the IRS as income to the employee, then the IDOL does not consider the money paid to the employee to be a fringe benefit.

Appellant's App. pp. 211-12.

On September 20, 2012, RLTC responded to Wressell's cross-motion for summary judgment and moved to strike paragraphs 6 and 12 through 18 of Moorhead's affidavit. In its response, RLTC also designated the O*Net summary report for cement masons and concrete finishers. On December 10, 2012, the trial court entered summary judgment in favor or RLTC and granted RLTC's motion to strike paragraphs 12 through 18 of Moorhead's affidavit. Regarding Moorhead's affidavit, the trial court found the following:

9. Monte Moorhead avers that some of what Gann avers are fringe benefits would not be so regarded by the U.S. Department of Labor. The same are irrelevant and are legal conclusions. The Court should and does disregard paragraphs 12-18 and the same are now STRICKEN. Monte Moorhead is not controlling legal authority on what wages are under the CCWA.

Appellant's App. p. 291.

The trial court also found that

12. There is no dispute that all work Wressell performed and for which he was paid is for work customarily performed by a skilled cement mason. There is no evidence that Wressell did work other than that which a skilled cement mason would do.

9

Appellant's App. p. 291. The trial court concluded that "as a matter of law based on the facts as designated here…, Wressell cannot challenge RLTC's classification of his employment on the two projects as a cement mason[,]" and entered summary judgment in favor of RLTC.

## DISCUSSION AND DECISION

### *Direct Appeal Issues*

### I. Whether the Trial Court Abused its Discretion in Striking Portions of Moorhead's Affidavit

Wressell contends that the trial court abused its discretion in striking paragraphs 12 through 18 of Moorhead's affidavit, which, as related above, deal with how IDOL determines whether a payment qualifies as a fringe benefit pursuant to the CCWA and detail some practical applications. "A trial court's ruling on a motion to strike a summary judgment affidavit is reviewed for an abuse of discretion." *Jackson v. Trancik*, 953 N.E.2d 1087, 1090 (Ind. Ct. App. 2011) (citing *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010)). "We will reverse only if the trial court's decision is 'clearly erroneous and against the logic and effect of the facts and circumstances before the court.'" *Id*. at 1090-91 (quoting *Indpls. Podiatry, P.C. v. Efroymson*, 720 N.E.2d 376, 383 (Ind. Ct. App. 1999)).

The trial court struck portions of Moorhead's affidavit on the basis that they were irrelevant and contained legal conclusions. We find both of these conclusions to be clearly erroneous. The question that must be answered is whether various payments made by RLTC directly to Wressell or on his behalf constitute fringe benefits. In *Union*

10

*Township School Corp. v. State ex rel. Joyce*, 706 N.E.2d 183 (Ind. Ct. App. 1996), *trans. denied*, we concluded that, for purposes of the CCWA, "wages" included fringe benefits and adopted the following definition for wages:

> Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him.
> [The] term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to the manner in which such compensation is computed.

*Id.* at 191 (quoting BLACK'S LAW DICTIONARY 1579 (6th ed. 1990); brackets in *Union Twp. Sch. Corp.*). *Inter alia*, it is clear that, in order for something to be a fringe benefit (a subset of wages), it has to benefit the employee. It follows that a payment or other advantage that benefits the employer would *not* be a fringe benefit, which is the premise underlying Wressell's argument on this point.

The paragraphs in question are unquestionably relevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Paragraphs 12 through 18 of Moorhead's affidavit relate to IDOL's general policy regarding how it defines fringe benefits and then detail how that policy is applied in certain situations, situations that all occurred in this case. Whether IDOL considers a certain type of payment to be a fringe benefit strikes us as evidence that would be quite helpful to the factfinder in characterizing that payment, and therefore relevant.

11

We must also conclude that the trial court's conclusion that the paragraphs contained legal conclusions is clearly erroneous. "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid. R. 704(b). We conclude that Moorhead's averments regarding IDOL policy and whether IDOL treats certain types of payments as fringe benefits do not constitute legal conclusions. At most, they are statements regarding administrative practices and policy, and nowhere in them is there any suggestion that they are somehow binding on the factfinder or that a particular result in Wressell's case is required by law. In other words, they contain no legal conclusion that certain payments made by RLTC to, or on behalf of, Wressell were not for fringe benefits under Indiana law. We conclude that the trial court abused its discretion in striking paragraphs 12 through 18 of Moorhead's affidavit.

## II. Whether the Trial Court Erred in Granting Summary Judgment

### *Standard of Review*

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.*

Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### A. Wressell's Job Classification

Both parties contend that the designated evidence fails to give rise to a genuine issue of material fact regarding Wressell's job classification and that summary judgment in their respective favors is therefore warranted. We disagree with both parties. The O*Net summary report for rough carpenters reads, in part, "Build rough wooden structures, such as concrete forms," Appellant's App. p. 215, while the O*Net summary report for cement masons and concrete finishers reads, in part, "Set the forms that hold concrete to the desired pitch and depth, and align them." Appellant's App. p. 228. While building wooden concrete forms is certainly consistent with the summary report for rough carpenter, it is just as consistent with the summary report for cement masons and concrete finishers. Just because one "sets" a concrete form does not exclude the possibility that that person also built the form, and, as already noted, the list of tasks in the relevant O*Net summary reports is non-exhaustive. It seems obvious that there would be considerable overlap between job classifications on any CCWA job site, with some tasks, such as clean-up or tool maintenance, being common to almost all, if not all, job classifications. In other words, there is no designated evidence to suggest that a cement mason is instantly transformed into a carpenter simply because he may perform a task that a carpenter also performs.

13

Moreover, RLTC designated evidence from CFO Gann that the wages paid to Wressell for his work on the Gatewood and Informatics Projects were in compliance with the CCWA. One inescapable inference to be drawn from CFO Gann's averment is that Wressell was correctly designated as a skilled cement mason the entire time he worked for RLTC; Wressell does not dispute that he was paid the proper wage for any particular job classification, arguing only that he was improperly classified. For his part, Wressell designated evidence that, pursuant to the CCWA, a person performing particular work was entitled to be paid for that work, regardless of job designation, and that much of Wressell's work for RLTC was as a skilled carpenter or skilled laborer, not a skilled cement mason. We conclude that this designated evidence generates a genuine issue of material fact regarding whether some of Wressell's work for RLTC was as a skilled carpenter or skilled laborer. We therefore reverse the trial court's grant of summary judgment on this question and remand for trial on the questions of whether some of the work Wressell did for RLTC was as a skilled carpenter or skilled laborer and, if so, how much.

### B. Fringe Benefits

Wressell contends that the designated evidence generates a genuine issue of material fact as to whether he was paid sufficiently for fringe benefits. More specifically, Wressell contends that RLTC improperly credited certain payments against its fringe benefit obligation to him. We conclude that a genuine issue of material fact exists on this question as well. RLTC designated evidence from CFO Gann that the fringe benefits paid to Wressell for his work on the Gatewood and Informatics Projects were in

14

compliance with the CCWA. Wressell designated evidence of seven payments RLTC made to him, or on his behalf, that RLTC considered to be for fringe benefits. Wressell designated additional evidence tending to show that those payments were of a type that did not, in fact, qualify as being for fringe benefits. The trial court erred in entering summary judgment in favor of RLTC on this point. We remand for trial on whether RLTC properly paid Wressell for fringe benefits.

### *Cross-Appeal Issue*

### III. Whether RLTC Is Entitled to Appellate Attorney's Fees

RLTC requests that we award it appellate attorney's fees pursuant to Indiana Appellate Rule 66(E), which provides, in part, "The Court may assess damages if an appeal … is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees."

Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151, 152 (Ind. 1987). Additionally, while Indiana Appellate Rule 66(E) provides this Court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Tioga Pines Living Ctr., Inc. v. Indiana Family and Social Svcs. Admin.*, 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), *trans. denied.*

Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Boczar v. Meridian Street Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.* Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum

expenditure of time both by the opposing party and the reviewing court. *Id.* Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Id.* Finally, we note that even pro se litigants are liable for attorney's fees when they disregard the rules of procedure in bad faith. *Srivastava*, 779 N.E.2d at 61; *see also Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990) (stating that the court could "cut [the pro se litigants] no slack simply because [they] have no formal legal training.").

*Thacker v. Wentzel*, 797 N.E.2d 342, 346-47 (Ind. Ct. App. 2003).

RLTC contends that Wressell committed procedural bad faith by improperly arguing the fringe benefit issue. RLTC notes that while Wressell devotes a large portion of his fact pattern to the issue of fringe benefits, he does not specifically make an argument regarding fringe benefits framed in a summary judgment context. While this is technically true, Wressell does make an argument regarding the striking of portions of Moorhead's affidavit which related to the fringe benefits issue and had no connection with the job classification issues, which we consider sufficient to address the fringe benefits issue on the merits. Suffice it to say that we found Wressell's submissions more than adequate to aid our review of the issues raised in this case, and we find nothing in either Wressell's Appellant's Brief or Reply Brief to warrant a conclusion of procedural bad faith. We decline RLTC's request to remand for the calculation of appellate attorney's fees.

The judgment of the trial court is reversed and remanded for further proceedings.

RILEY, J., and BROWN, J., concur.