

ATTORNEY FOR APPELLANT

Michael L. Einterz, Jr.
Einterz & Einterz
Zionsville, Indiana

ATTORNEY FOR APPELLEE

Robert S. Rifkin
Maurer Rifkin, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.L. Turner Corporation,
*Appellant-Defendant,*

v.

William Wressell,
*Appellee-Plaintiff,*

September 16, 2015

Court of Appeals Case No.
06A05-1411-PL-540

Appeal from the Boone Superior
Court

The Honorable Matthew C.
Kincaid, Judge

Cause No. 06D01-1201-PL-11

**Bradford, Judge.**

# Case Summary

[1] Appellee-Plaintiff William Wressell brought a claim against his employer Appellant-Defendant R.L. Turner Corporation ("RLTC") alleging that he did not receive wages he was entitled to under the Indiana Common Construction Wage Act ("CCWA"). The trial court found that RLTC provided insufficient fringe benefits to meet the minimum wage requirements of the CCWA and

awarded Wressell compensatory damages for the unpaid fringe benefits as well as statutory treble damages. The trial court also awarded attorney's fees to Wressell pursuant to the fee shifting provision of the Indiana Wage Payment Statute.

[2] On appeal, RLTC raises several issues which we consolidate and restate as follows: (1) whether the CCWA can form the basis for a private cause of action; (2) whether the trial court erred in finding that RLTC provided insufficient fringe benefits to meet the minimum requirements of the CCWA; and (3) whether the trial court erred in awarding attorney's fees to Wressell. Wressell argues on appeal that the trial court erred in failing to consider his overtime hours in calculating the amount of wages he was entitled to. We affirm the judgment of the trial court; however, we remand with instructions that the trial court award Wressell additional damages for overtime compensation.

## Facts and Procedural History

[3] Wressell filed a claim against RLTC on January 5, 2012 for unpaid wages. (App. 20-23) In December of 2012, the trial court granted a motion for summary judgment in favor of RLTC. That decision was reversed by this court on appeal in *Wressell v. R.L. Turner Corporation*, 988 N.E.2d 289 (Ind. Ct. App. 2013), *trans. denied*. We have previously outlined the facts of this case, the relevant portions of which are as follows:

> Between September 15, 2009, and June 20, 2010, RLTC employed Wressell as a skilled cement mason. Wressell worked on two projects

for RLTC, the Gatewood wing of the Mechanical Engineering Building at Purdue University ("the Gatewood Project") and the Informatics and Classroom Addition at Indiana University ("the Informatics Project").

Wressell worked 677 hours on the Gatewood Project, a project whose common construction wage scale provided that a skilled cement mason was to be paid an hourly wage of $24.25 and fringe benefits of $10.68 per hour. All told, a skilled cement mason would have been entitled to be paid a total of $23,647.61 for working 677 hours on the Gatewood project….

Wressell worked 452.5 hours on the Informatics Project, a project whose common construction wage scale provides that a skilled cement mason was to be paid an hourly wage of $21.75 and fringe benefits of $8.52 per hour. All told, a skilled cement mason would have been entitled to be paid a total of $13,697.18 for working 452.5 hours on the Informatics Project….

RLTC made several other payments on Wressell's behalf that it credited against its fringe benefit obligations to him. Specifically, RLTC paid (1) $268.80 to a benefit consultant to provide employees with claims assistance, if needed; (2) $128.70 to a pension plan; (3) a $1397.00 assessment charged to Wressell to recover a portion of fringe benefits paid by RLTC on his behalf; (4) $245.25 for mandatory first aid and CPR training; (5) $225.00 for materials used in training; (6) $1352.00 paid to reimburse Wressell for gasoline used in driving to and from the Projects; and (7) a $1260 assessment charged to Wressell to pay RLTC to administer his benefits.

On or about October 10, 2010, Wressell filed common construction wage complaints with the Indiana Department of Labor ("IDOL"), claiming that RLTC "switched pay rate in middle of job [and/or] never agreed upon rate" for the Gatewood and Informatics Projects. Appellant's App. pp. 31, 33. Although the IDOL opened investigations into Wressell's complaints, it did not resolve them, "primarily because [RLTC] either failed or refused to cooperate in the investigations and refused to produce the records necessary for [IDOL] to determine whether [RLTC] paid wages in accordance with the [CCWA]." Appellant's App. p. 35. On December 29, 2011, the Indiana Attorney General's office authorized Wressell to pursue his claims in court. On January 5, 2012, Wressell sued RLTC, contending

that he had been underpaid for his work on the Gatewood and Informatics Projects.

On June 29, 2012, RLTC filed a motion for summary judgment, alleging that there existed no genuine issue of material fact regarding whether Wressell had been paid the wages and fringe benefits to which he was entitled. *Inter alia*, RLTC designated an affidavit from its Chief Financial Officer ("CFO") James Gann, in which he averred that the wages and fringe benefits paid to Wressell for his work on the Gatewood and Informatics Projects were in compliance with the common construction wage scale in place for each project.

On August 27, 2012, Wressell filed a response to RLTC's summary judgment motion and cross-moved for summary judgment. The basis of Wressell's motion was his contention that much of the work he performed on the Gatewood and Informatics Projects was actually as a carpenter or laborer, work for which, overall, he was entitled to be paid more. Wressell also contended that many of RLTC's payments credited against its fringe benefit obligation to him were, in fact, not for fringe benefits.

* * *

Wressell also averred to the following

15. The distance between [RLTC]'s Zionsville office and the Gatewood [Project] is in excess of 50 miles (100 miles round trip). The distance between [RLTC]'s Zionsville office and the [Informatics Project] is in excess of 70 miles (140 miles round trip).

16. When I worked at the Gatewood and Informatics Projects, I was paid an average of $2.66 per gallon to fuel my pick-up truck, and it cost me in excess of $17.00 a day in gas to drive to and from the Gatewood Project ... and in excess of $24.00 per day to drive to and from the Informatics Project[.]

17. [RLTC] paid me $2.00 per hour to apply to the cost of gas for my truck for each hour I worked at the Gatewood Project ...; accordingly, if I worked 8 hours ... I was given $16.00 to cover gas. If I worked less than 8 hours, the amount I was given for gas was reduced accordingly. [RLTC] gave me no money for gas to drive the 140 miles to and from

Bloomington, Indiana for the days I worked on the Informatics Project.

18. I was not required by [RLTC] to document the miles I drove each day to the common construction wage worksites and [RLTC] did not treat the gas payments to me as taxable fringe benefits or report the gas payments as income to the IRS. [RLTC] did not provide transportation for me to and from its out-of-town worksites.

19. I spent more than the $1,352.00 [RLTC] gave me in gas money to drive to [RLTC]'s work sites in Lafayette, Indiana and Bloomington, Indiana.

20. [RLTC] did not provide me with a pension or pension benefit, and [RLTC] did not contribute any money to a pension for me.

Appellant's App. pp. 205-06.

* * *

Wressell also designated an affidavit from Monte Moorhead…. Regarding fringe benefits, Moorhead averred the following:

12. Employer expenses that are a part of its regular administrative overhead costs of doing business, or that are primarily for the benefit of the employer, are not treated by the IDOL as employee fringe benefits. Expenses that are paid by a company to operate its business and to achieve increases in productivity and profit are not considered fringe benefits where the expenses are not a direct cash payment or other direct benefit to the employee; consequently, even if an employee gets an incidental benefit, the cost is not treated as a fringe benefit.

13. When an employee is required to undergo employer mandated training, and the training is given at the discretion and the control of the employer, the IDOL would not allow the employer to claim a fringe benefit allocation or credit for the training, nor is the employer entitled to claim as a fringe benefit the cost it pays to provide books or materials to its employees for the training.

14. As an example, if a company requires an employee to take first aid or CPR training, its cost for providing such training would not be considered by the IDOL as a fringe benefit to the employee because the training was required by the Company and the employee was under the direction and control of the employer.

15. If the employer has a pension plan, but an employee does not participate in the plan, and the employer does not make any contributions on the employee's behalf, then the employer's expenses for the pension plan are not credited by the IDOL as a fringe benefit to the employee.

16. If an employer pays the cost of providing a benefit plan, but an employee chooses not to elect to participate in the plan, the IDOL would not allow the employer to claim a fringe benefit credit for its expenses.

17. The IDOL does not consider an employer's administrative costs to provide benefits to employees as a fringe benefit. It makes no difference whether the employer pays a third party to administer the benefits or administers the benefits in-house.

18. If employees are given a fixed dollar amount per hour to reimburse them for having to spend their own money on gas to drive to and from a company's principal office to remote construction sites, and the money paid is not reported by the employer to the IRS as income to the employee, then the IDOL does not consider the money paid to the employee to be a fringe benefit.

Appellant's App. pp. 211-12.

*Wressell*, 988 N.E.2d at 292-96 (footnotes omitted).[1]

---

[1] Much of the litigation prior to this appeal focused on Wressell's job classification. Under the CCWA, a worker's job title (mason, carpenter, laborer, etc.) corresponds to a different pay scale. However, because neither party has appealed the trial court's decision regarding Wressell's job classification, we have not included the facts from the prior appeal regarding that issue.

[4] The trial court granted RLTC's June 29, 2012 motion for summary judgment. On appeal, we concluded that there were genuine issues of material fact regarding, among other things, whether Wressell was paid sufficiently for fringe benefits. *Id*. at 298. As such, we reversed the trial court's order of summary judgment and remanded for further proceedings on "whether RLTC properly paid Wressell for fringe benefits." *Id*.

[5] After the case was remanded, the trial court held a bench trial in which it made the following findings and conclusions:

> 17. The Court FINDS that 100% of the hours worked by Wressell on the Gatewood and Informatics projects was as a skilled cement mason.
>
> …
>
> 21. For the Gatewood Project, the Court FINDS that Wressell was entitled to be paid $24.25 per hour plus $10.68 in fringe benefits.
>
> 22. For the Informatics Project, the Court FINDS that Wressell was entitled to be paid $21.75 per hour plus fringe benefits of $8.52 per hour.
>
> 23. RLTC's pay records show that Wressel was paid $18,344.98 in base wages on the Gatewood Project and $12,044.50 in base wages for his work on the Informatics Project for total wages (excluding fringe benefits) of $30,389.48.
>
> 24. The parties agree that RLTC provided Wressell with the following fringe benefits which may be credited to RLTC's fringe benefit obligation to Wressell:
>
>> 1. Premium payments for health insurance        $1,991.76
>>
>> 2. Premium payments for dental insurance        $140.22
>>
>> 3. Premium payments for group life insurance        $25.02
>>
>> 4. Premium payments for accidental death and dismemberment insurance        $5.94
>>
>> 5. Premium payments for short term disability

| | |
|---|---|
| insurance | $56.62 |
| 6. Premium payments to fund an employee assistance program of at least | $11.40 |
| 7. Paid time off (PT) | $260.00 |
| 8. Payment for three (3) holiday | $624.00 |
| 9. Payments made by Company to a third party to comply with COBRA requirements | $5.10 |
| TOTAL | $3,119.96 |

25. The Court FINDS that Wressell received no other fringe benefits meaning compensation of economic value to him.

26. RLTC as a matter of internal cost accounting allocated certain costs to Wressell which were required to be incurred to complete the projects, but these are not fringe benefits to Wressell.

27. The total amount of compensation Wressell received for the Gatewood and Informatics projects was $33,509.44.

28. The total amount of compensation Wressell was entitled to receive for the Gatewood and Informatics projects as a skilled mason was $37,362.26 = ((677.5 x ($24.25 + $10.68) + ((452.5) x ($2[1].75+$8.52)).

29. Wressell was underpaid $3,852.82.

30. I.C. 22-2-5-2 provides as follows:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

31. The Court CONCLUDES as a matter of law that it would be error having found unpaid wages to not award liquidated damages and a reasonable attorney's fee for work performed regarding the employer's failure to pay for time worked in excess of the hours paid. See Sallee v. Mason, 714 N.E.2d 757 [(Ind. Ct. App. 1999)].

32. The Court CONCLUDES as a matter of law that the Wage Payment Statute, IC 22-2-5, governs both the frequency and amount an employer must pay its employee. St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 2002 Ind. LEXIS 324 (2002), and therefore that liquidated damages and reasonable attorney fees must be ordered….

It is therefore ORDERED ADJUDGED and DECREED as FOLLOWS:

1. Judgment in favor of Plaintiff in the sum of $3,852.82 in damages plus liquidated damages of $7,705.64 for a total of $11,558.46 and against Defendant is GRANTED.

Appellant's App. pp. 10-13.

[6] Following the judgment, both parties filed motions to correct error, both of which were denied by the trial court. Wressell then filed a petition requesting that RLTC be ordered to pay his attorney's fees. On October 23, 2014, the trial court granted that motion with the following order.

1. After trial on May 13 and 14, 2014, Plaintiff was awarded a judgment of $3,852.82 in damages plus liquidated damages of $7,705.64.

2. Defendant took the position at summary judgment, at trial and up until its Motion to Correct Error that William Wressell was paid at least what he was entitled to and probably more.

3. Plaintiff took the position that Wressell was underpaid $8,205.82.

4. Plaintiff generally prevailed although not on all issues.

5. The Court found, and even Defendant seems to concede by its Motion to Correct Error, that Defendant did not pay all of William Wressell's wages.

6. …

7. I.C. § 22-2-5-1, calls for liquidated damages (already awarded) and reasonable attorney fees.

8. These types of attorney fee shifting statutes can work apparent inequities. It can cost significantly more to vindicate one's right than the value for the right impaired. So as a practical matter, the real winner in the quest for justice is the attorney by the fees he or she earns.

9. The retort is that that is precisely the point. If an attorney cannot earn a fee commensurate with the significant work it takes to vindicate what might be a modest right or a modest injustice – $3,800 of underpaid wages over two years – than [sic] modest injustices will continue.

10. While the fees claimed in this matter are breathtaking and giving of pause to their imposition, the law is the law. If reasonable fees cannot be earned, no lawyer will take the case.

11. …

12. Plaintiff's lawyers took the case on an agreement that limits Mr. Wressell to a contingency fee of 40% of the judgment [or actual attorney's fees awarded by settlement or by a court]. Defendant suggest that that agreement caps the fees. Defendnat makes a colorable argument but the Court rejects it.

13. Defendants, the Court concludes, erroneously construe SCI Propane, LLC v. Frederick as establishing an ipso facto rule that the contingency fee is always the reasonable fee if it is less than some hourly calculation. The problem in that case, the Court finds, was that the estate (the client) was enriched by the fee owed. The estate was actually enlarged. Here, Mr. Wressell will get no such windfall. He is only getting his judgment and liquidated damages. The fees awarded in this case are flowing through him directly to his lawyers.

14. As a matter of professional responsibility, fees must be reasonable.

15. [Wressell's attorneys] have totaled 349.8 hours of charged time over the life of the case which included defending a summary judgment, prevailing at an appeal, defending a transfer petition and prevailing at trial.

16. There are time entries, to Plaintiff's attorneys' credit, which do not appear to be compensated.

17. The detail in the bills is fairly typical and is adequate to put anyone asked to pay them on notice of what was done by the lawyers.

18. On any two year recapitulation there may be entries which appear suspect. Defendant points out 3.7 hours to review a summary judgment motion. This admittedly is not the best of the Plaintiff's attorneys' time entries. Defendant attacks the entries as self-serving and made with the incentive to boost them up.

19. But any fee affidavit is self-serving. If there was no detailed billing statement attached to the fee affidavit then the complaint would be that there is no detail. The 3.7 hour entry contains itself less detail than might be desired. If a client got that bill without any other context around it, they might fairly question it.

20. But in the overall context the hours billed are reasonable. The entries are adequately precise. It is certainly possible to spend 3.7 hours reading and digesting a motion that would, if granted, punt your client's case out of court.

21. The Defendant makes one argument on the fee bill that carries some merit. Defendants filed a cross-motion for summary judgment. Much of this work was co-extensive with defending the Plaintiff's requests for summary judgment. From reviewing the bill it looks like about 16.9 hours of time was focused on Plaintiff's cross-motion. It did not succeed. It was filed after the Defendant's motion. It was tactical in nature…. [T]he cross motion really did not advance the Plaintiff's litigation forward. It was not found meritorious on appeal. Deducting 16.9 hours from the hours spent is reasonable.

22. The Court does not see fit to deduct time on the discovery motion Defendant chatracterizes as "unsuccessful." There was a lot of discovery back and forth in this matter and it was not always amenable. There are, during any successful litigation efforts, moments of failure. Overall the litigation was successful.

23. …

24. There is nothing offered by Defendants contrary to the reasonable rate [of $300 per hour] suggested by [Wressell's] affidavits.

25. The Court finds that a blended rate of $300 for [Wressell's attorneys] is reasonable for Boone County….

26. Overall 332.9 hours at a reasonable rate of $300 per hour were necessary for Mr. Wressell to vindicate his claim.

27. Attorney fees awarded should be and are $99,870.00

28. Though proportionally greater than the judgment by a factor of nearly ten it does not enrich Plaintiff and is not unreasonable under the Wage Payments Statute.

29. … Plaintiff is entitled to $137.00 to file the suit and $250.00 in Appellate Court costs for $387.00 total.

Appellant's App. pp. 209-212.

# Discussion and Decision

RLTC raises several issues in this appeal which we consolidate and restate as follows: (1) whether the CCWA can form the basis for a private cause of action; (2) whether the trial court erred in finding that RLTC provided insufficient fringe benefits to meet the minimum requirements of the CCWA; and (3) whether the trial court erred in awarding attorney's fees to Wressell. Wressell also raises one claim of error on appeal, arguing that the trial court failed to consider his overtime hours in calculating the amount of compensation he was entitled to.

## I. Private Cause of Action Under the CCWA

As a threshold issue, RLTC argues that the CCWA cannot form the basis for a private civil action. "'Questions of statutory interpretation are questions of law and are reviewed de novo.'" *In re Howell*, 27 N.E.3d 723, 726 (Ind. 2015) (quoting *In re Carroll Cnty. 2013 Tax Sale*, 21 N.E.3d 832, 834 (Ind. 2014)).

[9] As RLTC notes, the text of the CCWA does not expressly create a private cause of action. However, in *Stampco Construction Co., Inc. v. Guffey*, 572 N.E.2d 510, 512 (Ind. Ct. App. 1991), this court held that a private cause of action could be brought under Indiana's prevailing wage statute. *See also Burgess v. E.L.C. Elec., Inc.*, 825 N.E.2d 1, 16 (Ind. Ct. App. 2005); *E.L.C. Elec., Inc. v. Indiana Dep't of Labor*, 825 N.E.2d 16, 18 (Ind. Ct. App. 2005) (acknowledging that a private cause of action may be brought under the CCWA). RLTC notes that the United States District Court for the Southern District of Indiana called *Stampco* into doubt and certified for the Indiana Supreme Court the question of whether such a private cause of action exists under the CCWA. *Lewis v. Gaylor, Inc.*, 914 F. Supp. 2d 925 (S.D. Ind. 2012). However, the case was voluntarily dismissed before the Supreme Court had an opportunity to consider the question. We acknowledge RLTC's argument but decline to part from precedent and will leave any such decision to the Indiana Supreme Court.

## II. Fringe Benefits

[10] RLTC claims that the trial court erred in failing to include other proffered fringe benefits in its calculation of total compensation and that the trial court erred in shifting the burden of proof on this issue from Wressell to RLTC.

### A. Burden of Proof

[11] RLTC argues that trial court improperly shifted the burden of proof to RLTC regarding whether RLTC provided certain fringe benefits to Wressell. Essentially, RLTC claims that the trial court inappropriately required RLTC to

prove the fringe benefits it provided Wressell instead of Wressell having to prove that he did not receive certain benefits. We cannot agree with RLTC's characterization of the burden of proof. Their approach would essentially require Wressell to prove a negative by identifying benefits which he did not receive. We find this illogical. Wressell met his initial burden by establishing (1) the amount of compensation which, in his opinion, he actually received in wages and fringe benefits, and (2) that the amount he received was less than the total wages required to be paid under the CCWA to a worker of his skill level. In its defense, RLTC argued that Wressell received additional fringe benefits which, when considered with his other wages, amounted to a total compensation in excess of that required by the CCWA. The trial court declined to credit much of RLTC's argument as to what it considered fringe benefits. Whether or not the trial court erred in its determination of what constitutes a fringe benefit is the crux of this litigation which we will examine in more detail below. However, the trial court did not improperly shift the burden of proof to RLTC.

## B. Whether the Trial Court Erred in Determining What Constituted Fringe Benefits

[12] Determining whether certain benefits provided by an employer constitute fringe benefits for purposes of the CCWA is a question of law. *See Burgess*, 825 N.E.2d at 10. Appellate courts evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions. *Seel v. State*, 739 N.E.2d 170, 172 (Ind. Ct. App. 2000).

[13]  RLTC claims that the trial court erred in failing to consider the following items fringe benefits: "health and welfare benefits, availability of a 401K plan[2], training, travel per diem, benefits orientation, and benefits administration." Appellant's Br. pp. 18-19. Aside from travel per diem, RLTC only lists these proffered benefits by name and provides no explanation as to what these benefits entail, their monetary value, or why it believes they should be considered fringe benefits for purposes of the CCWA. As such, we address only the issue of whether the trial court erred in failing to include travel per diem as a fringe benefit.[3]

[14]  *In Union Township School Corp. v. State ex rel. Joyce*, 706 N.E.2d 183 (Ind. Ct. App. 1998), *trans. denied*, we concluded that, for purposes of the CCWA, the term "wages" includes fringe benefits and adopted the following definition for wages:

> Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with

---

[2] The parties agree that RLTC made no contributions to Wressell's 401(k) or pension plan. (Tr. 136, 433)

[3] We note that although the trial court stated that it did not consider travel per diem a fringe benefit for purposes of the CCWA, it appears that the trial court included travel per diem paid to Wressell in its calculation of overall, CCWA-eligible wages. Therefore, even if RLTC were to prevail on the merits of this issue, the amount awarded to Wressell would not change. Nevertheless, we will address the argument so that the trial court may remedy any possible errors on remand.

respect to work for him. [The] term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to the manner in which such compensation is computed.

*Id.* at 191. In order to be considered a fringe benefit, there has to be a clear benefit to the employee. *Wressell*, 988 N.E.2d at 296.

[15] RLTC's President and CEO, Greg Turner, testified that RLTC had a policy of paying a travel per diem of two dollars per hour worked to employees who traveled more than sixty miles one-way to get to a job site. (Tr. 396-98) Wressell testified that when he was initially asked by his supervisor to move to the Gatewood Project he declined because it would cost him too much in gas to make the trip. (Tr. 141) Wressell agreed to work the Gatewood Project only after he was informed that he would be paid an additional two dollars an hour in travel per diem. (Tr. 141)

[16] Following the parties' closing statements at trial, the trial court stated that "I think the two dollars [an hour per diem] which comes out to $1452 [sic] additional to what was stipulated to is appropriate, is an appropriate fringe benefit but I'm not sure about the rest of it." Tr. p. 468. However, the trial court later stated that it did not consider travel per diem to be a legitimate fringe benefit and explained its rationale for that decision as follows:

> In so finding the Court ultimately rejected the notion that Plaintiff received fringe benefits (including payments for gasoline to travel for the principal benefit of [RLTC]) beyond $3,119.96 which [RLTC] did provide. Had Wressell resided closer the gas money would not have been paid and so the same is not a fringe benefit as contemplated by the [CCWA]. The principal beneficiary was the employer.

Appellant's App. p. 209 n.1.

[17]     Based on the facts of this particular case, we are unpersuaded that per diem paid as a reimbursement for travel costs should be considered a fringe benefit for purposes of the CCWA. Traveling from Indianapolis to the Gatewood Project in Lafayette imposed a significant cost on Wressell and similarly situated employees. RLTC's payment of travel per diem operated to shift a portion of that cost from those employees back to the company. However, the payments did not provide a standalone benefit to Wressell. Should Wressell have been injured or taken paid time off, he would be paid only his typical hourly wage, and would not receive per diem because he incurred no travel costs.

[18]     In his appellate brief, Wressell provides an insightful example which we paraphrase here: if an employee is required by his employer to travel by plane to another city for work, the employee receives no benefit when the employer reimburses him for the cost of the plane ticket. The airfare is simply a cost of doing business which the company incurs, there is no standalone benefit to the employee. The same logic applies here. RLTC was incurring a cost to assure its workers were able to travel to the job site.

[19]     We also note that the travel per diem payments had few similarities as other wages or benefits. Wressell did not receive per diem in the same fashion as he did other wages or fringe benefits, but received a tax-free cash payment at the end of each day as per diem. Aside from his daily work, Wressell incurred no

cost in order to receive his other fringe benefits, e.g. health, dental, and life insurance, paid time off, and paid holidays.

[20] This reasoning is supported by other jurisdictions which have addressed this issue and have declined to include travel per diem as a wage or fringe benefit where the per diem did not exceed the cost incurred by the employee. *See Antillon v. N.M. State Highway Dep't*, 820 P.2d 436, 440 (N.M. Ct. App. 1991) (reimbursement for travel expenses is not considered part of a worker's wage unless the reimbursement is in excess of the employee's actual expenses and thus constitutes a real economic gain to the employee); *see also Hackett v. W. Express, Inc.*, 21 A.3d 1019, 1022 (Me. 2011) (per diem payments to reimburse employee for travel expenses is "not includable to any extent in average weekly wage"). Accordingly, we affirm the trial court's decision regarding the amount of fringe benefits received by Wressell for purposes of the CCWA.

# III. Attorney Fees

[21] We review a trial court's award of attorney's fees, and the amount of any such award, for an abuse of discretion. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 286 (Ind. Ct. App. 2004) (citing *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530, 533 (Ind. 1997)). "An abuse of discretion occurs when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." *Id*. at 286-87. "An award of attorney's fees will be reversed on appeal as excessive only where an abuse of the trial court's discretion is apparent on the face of the record." *Id*. at 287 (citing *Owen v.*

*Vaughn*, 479 N.E.2d 83, 88 (Ind. Ct. App. 1985)). "We do not reweigh the evidence; rather, we determine whether the evidence before the trial court can serve as a rational basis for its decision." *DePuy Orthopaedics, Inc. v. Brown*, 29 N.E.3d 729, 732 (Ind. 2015) (citation omitted).

## A. Whether Wressell was Entitled to Attorney's Fees Under Indiana's Wage Payment Statute

[22] Indiana Code Section 22-2-5-2 provides that employers who fail to pay their employees' wages are liable for an employee's reasonable attorney's fees and court costs incurred as a result of litigation to obtain unpaid wages. RLTC contends that fringe benefits should be treated differently than wages for purposes of the attorney fee shifting provision of Indiana's Wage Payment Statute (Ind. Code § 22-2-5-1 *et. seq.*). For several reasons, we disagree with this proposition.

[23] The purpose of the fee shifting provision is to deter employers from playing "fast and loose with wage obligations" by imposing treble damages and attorney's fees for non-compliant employers. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 706 (Ind. 2002). Fringe benefits are a distinct form of compensation but are nonetheless an obligation owed to the employee by the employer. We have no reason to believe that the legislature did not intend for this deterrent scheme to extend to fringe benefits.

[24] Furthermore, this court has previously treated employee benefits as wages in several different contexts. When this case was on appeal previously, we noted

that "for the purposes of the CCWA, 'wages' include fringe benefits," and that fringe benefits are "a subset of wages." *Wressell*, 988 N.E.2d at 296 (citing *Union Township School Corp.*, 706 N.E.2d 183). We have also determined that deferred benefits, such as "PTO, pension benefits, retirement savings plans," etc., which have accrued during an employee's tenure, are wages for purposes of the Wage Payment Statute. *Taylor v. Cmty. Hospitals of Ind., Inc.*, 860 N.E.2d 1200, 1203 (Ind. Ct. App. 2007). RLTC was required to compensate Wressell at an expressly defined rate under the CCWA and failed to do so. Consequently, Wressell was entitled to treble damages and attorney's fees under the Wage Payment Statute.

## B. Whether the Trial Court's Award of Attorney's Fees was Reasonable

[25] RLTC argues that the trial court's award of attorney's fees was unreasonable (1) compared to the damages awarded and (2) because it was based on an unreliable calculation of actual hours worked.

[26] In determining a reasonable amount of attorney's fees, consideration should be given to the nature and difficulty of the litigation; the time, skill, and effort involved; the fee customarily charged for similar legal services; the amount involved; the time limitations imposed by the circumstances; and the result achieved in the litigation. *See In re Eiteljorg*, 951 N.E.2d 565, 573 (Ind. Ct. App. 2011); *see also Zebrowski & Assocs., Inc. v. City of Indpls., By & Through its Bd. of Dirs. for Utils. of its Dep't of Pub. Utils.*, 457 N.E.2d 259, 264 (Ind. Ct. App. 1983).

### i. Amount Involved and Result Achieved

RLTC neglects to analyze the reasonableness of the fee award under the aforementioned factors and instead argues that an attorney fee award of four times the *potential* recovery is patently unreasonable. RLTC cites *Ponziano Construction Services. Inc. v. Quadri Enterprises, LLC* to suggest that limits on attorney's fee awards based on potential recovery have been upheld in Indiana. 980 N.E.2d 867, 877 (Ind. Ct. App. 2012). However, the *Ponziano* court was addressing a very narrow issue.

> The award of attorney's fees in an action to foreclose on a mechanic's lien is not an attempt to compensate the attorney for all the legal services performed in connection with the lien; rather, the amount of the award is intended to reflect the amount the lienholder reasonably had to expend to foreclose on the lien. Such awards should be made with caution so that excessive awards of attorney's fees do not discourage property owners from challenging defective workmanship on the part of lien holders. The amount awarded as attorney's fees therefore should be reasonable in relation to the amount of the judgment secured.

*Id.* at 877 (citations omitted). *Ponziano* dealt with too distinct of an issue to provide significant support for a comparable limitation here. RLTC cites no other cases or statutes which support the imposition of limits to attorney's fee awards based solely on the potential compensatory award.

[28] We acknowledge the policy dilemma faced by lawmakers in striking an appropriate balance between (1) creating a mechanism which helps employees vindicate wage claims and (2) the risk of exploitation of that mechanism by attorneys to the detriment of employers. Our courts play a part in maintaining

this balance by using the abovementioned factors to assure that all attorney's fees awarded are reasonable. Despite RLTC's argument, there is no precedent which provides for a definitive cap to attorney's fee awards based on the potential or actual recovery. The recovery is only one consideration which the court may take into account when determining what amount of fees are reasonable. RLTC is free to lobby the legislature to promulgate such a rule but it is not this court's place to do so.

[29] In the same vein, RLTC argues that the trial court erred by failing to consider either the actual or potential award in its decision to award attorney's fees. However, the trial court addressed both the "amount involved" and "result achieved" factors enunciated above. Wressell claimed that he was underpaid $8,205.82, (App. 209), and was ultimately awarded $3,852.82 in compensatory damages for unpaid wages and $7,705.64 in treble damages. The trial court noted that the disputed amount was relatively small, especially when compared to the attorney's fees, but "[i]f an attorney cannot earn a fee commensurate with the significant work it takes to vindicate what might be a modest right or a modest injustice—$3,800.00 of underpaid wages over two years—than [sic] modest injustices will continue." Appellant's App. p. 210. The trial court's reasoning echoes the purpose of the fee shifting provision; to deter employers from failing to pay workers their due wages. *Steele*, 766 N.E.2d at 706.

### ii. Calculation of Attorney Time Billed

[30] Wressell's attorney's requested fees for 349.8 hours of work. The trial court found that, overall, the amount of hours worked was reasonable considering the

complexity of the issues and the length of the case, which lasted several years and included defending and losing on summary judgment, prevailing in a 2013 appeal in which this court overturned that summary judgment, and ultimately prevailing at trial. The trial court found the attorneys billing statements to be adequately precise and detailed. Of the over 300 hours billed, the trial court found only 3.7 hours to contain "less detail than might be desired." Appellant's App. p. 211. The trial court also deducted 16.9 hours from the requested amount for time spent on a failed cross-motion for summary judgment and ultimately determined the reasonable fees to be 332.9 hours at a rate of $300 per hour for a total of $99,870 (RLTC does not contend that the hourly rate was unreasonable).

[31] RLTC makes no specific argument as to why the calculation of hours worked is unreasonable and instead argues only that the documents cataloguing the attorney's hours worked should be viewed with skepticism because the client, Wressell, was not actively reviewing the accuracy of those billed hours. Further, RLTC argues that the trial court erred when it "accepted and awarded fees based on the time entries as presented." Appellant's Br. p. 33. However, as described above, the trial court conducted its own objective review of the time entries and, with the exception of 16.9 hours deducted for time spent on a failed cross-motion, found the total calculation of hours to be reasonable. As such, RLTC's argument is essentially a request for this court to reweigh the evidence and reevaluate the credibility and accuracy of the time entries. "We do not reweigh the evidence; rather, we determine whether the evidence before

the trial court can serve as a rational basis for its decision." *DePuy Orthopaedics*, 29 N.E.3d at 732. Based on the fact that this case has continued for nearly four years and is now on appeal for a second time, we think the trial court had ample basis for its decision on the reasonableness of the amount of hours billed by Wressell's attorneys.

### iii. Culpability for Protracted Litigation

[32] When determining an appropriate attorney fee award, this court has also looked to whether either party is responsible for unduly delaying the litigation. *Eiteljorg*, 951 N.E.2d at 573. The reason for the protracted litigation in this case was due, in large part, to RLTC's reluctance to cooperate during mediation or during the IDOL investigation, as well as RLTC's attempts to hinder discovery. IDOL stated that it was unable to resolve Wressell's claim "primarily because [RLTC] either failed or refused to cooperate in the investigations and refused to produce the records necessary for [IDOL] to determine whether [RLTC] paid wages in accordance with the [CCWA]." Appellant's App. p. 47. Therefore, litigation may have been unnecessary had RLTC cooperated with IDOL's investigation. Additionally, it appears RLTC was guilty of dilatory discovery tactics. The trial court described the parties' discovery as "not always amenable," Appellant's App. p. 211, and, at one point, Wressell was forced to file a motion to compel discovery and requesting sanctions before RLTC ultimately complied with certain discovery requests. (App. 4)

*iv. Reasonableness of Attorney Fees - Analysis*

[33]    In light of the protracted nature of this litigation, RLTC's obstructive litigation behavior, the complexity of the issues, the mostly successful result achieved for Wressell, and the purpose behind the fee shifting provision of the Wage Payment Statute, we find that the trial court did not abuse its discretion in fashioning its attorney's fees award. As the trial court noted, "While the fees claimed in this matter are breathtaking and giving of pause to their imposition, the law is the law. If reasonable fees cannot be earned, no lawyer will take the case." Appellant's App. p. 210. Were we to find that the fees awarded in this case were unreasonable solely in light of the ultimate compensatory award, there would be a chilling effect on the ability of injured employees to find attorneys willing to take their cases.

# C. Fee Agreement

Finally, RLTC argues that the attorney's fees awarded should have been limited to forty percent of the total award pursuant to the contingency fee arrangement between Wressell and his attorneys. Wressell's attorney fee agreement reads as follows:

> Client agrees to pay to said Attorneys, in consideration of their services, a sum of money equal to the greater of: (a) forty percent (40%) of any and all sums received or recovered upon said claim or (b) actual attorney's fees awarded by settlement or by a court of competent jurisdiction and paid by the Defendant.

Appellant's App. p. 198. RLTC argues that an award of attorney's fees greater than forty percent of the recovery would be punitive in nature and provide a

"windfall" to Wressell. Appellant's Br. p. 36. This argument is without merit. The trial court's award of attorney's fees was based on the total hours worked by Wressell's attorneys and will compensate the attorneys for their time spent on the case. In the fee agreement with his attorneys, Wressell agreed to pay "actual attorney's fees awarded…by a court." Appellant's App. p. 198. Therefore, despite RLTC's contention otherwise, Wressell will not be enriched in any manner by the attorney fee award because he will retain none of that award for himself.

## D. Appellate Fees

[34] RLTC claims that, pursuant to Indiana Appellate Rule 66(E), Wressell was not entitled to receive attorney's fees for appellate work or appellate court costs for work regarding Wressell's appeal in 2013. Appellate Rule 66(E) provides that "[t]he Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." However, Wressell's claim for attorney's fees was made under Indiana Code section 22-2-5-2, not under Rule 66(E). Section 22-2-5-2 does not exclude appellate work from that recoverable as reasonable attorney's fees. Furthermore, the Indiana Supreme Court has previously held that appellate attorney's fees are properly awardable under Section 22-2-5-2. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 706 (Ind. 2002). RLTC cites to no cases or statutes supporting its contention that appellate fees are not recoverable under Section 22-2-5-2.

# IV. Overtime

[35] In his cross-appeal, Wressell argues that the trial court erred in failing to include overtime hours in its calculation of his rate of pay. RLTC did not address Wressell's claim for overtime compensation in either its initial brief or reply brief. Failure to respond to an issue raised in an opposing party's brief is akin to failing to file a brief, as to that issue. *Gwinn v. Harry J. Kloeppel & Assocs., Inc.*, 9 N.E.3d 687, 690 (Ind. Ct. App. 2014). Where one party fails to file an appellate brief, we may reverse the trial court if the appellant presents a case of prima facie error. *Id*. "Prima facie means 'at first sight, on first appearance, or on the face of it.'" *Id*. (quoting *Ponziano*, 980 N.E.2d at 875.)

[36] Indiana Code section 22-2-2-4(k) provides that "no employer shall employ any employee for a work week longer than forty (40) hours unless the employee receives compensation for employment in excess of the hours above specified at a rate not less than one and one-half (1.5) times the regular rate at which the employee is employed." Wressell claims, and the trial court acknowledged in its judgment, that Wressell worked 22 hours of overtime on the Gatewood Project and 21.5 hours of overtime on the Informatics Project. However, the trial court did not include any overtime compensation in its calculation of total compensation Wressell is entitled to under the CCWA.

[37] Wressell claims that he is entitled to an additional $500.56 in compensatory damages for the uncalculated overtime hours and a cooresponding $1,001.12 in additional liquidated damages pursuant to Indiana Code section 22-2-5-2.

According to Wressell's time sheets, Plaintiff's Ex. 7, it appears that Wressell did work overtime on both the Gatewood and Informatics Projects and his calculations of the total overtime compensation are correct. Therefore, Wressell has established prima facie error by the trial court. We remand with instructions that the trial court award Wressell an additional $500.56 in compensatory damages and $1,001.12 in liquidated damages.

[38] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

May, J., and Crone, J., concur.